Keating, J.
Josephine Flanagan, in June of 1958, was under the care of Dr. Max Eisenstat for a gall bladder ailment. Dr. Eisenstat determined that an operation was necessary, and the plaintiff entered Mount Eden General Hospital for that purpose. -On July 14, 1958 the operation was performed. During the course of the operation surgical clamps were inserted in the •plaintiff’s body.
In the spring of 1966 the plaintiff experienced severe pain in the region of her abdomen. She consulted a doctor. He advised her on June 3, 1966 that surgical clamps were discovered by X-ray analysis to be lodged in her body. On June 10, 1966 an operation was performed to remove the clamps.
An action was commenced on October 20, 1966 by the service of a summons and complaint upon the defendant, Mount Eden *429 General Hospital and by the service of a summons and complaint upon the estate of the doctor on November 2, 1966. The complaint alleged that the clamps were carelessly and negligently allowed to remain within her body after the gall bladder operation and that they were not discovered or could not have been discovered by the plaintiff until June of 1966.
Both defendants (the executors of the Eisenstat estate and the hospital) separately moved to dismiss the plaintiff’s complaint on the ground that the Statute of Limitations barred the institution of the action. Special Term dismissed the complaint as to each defendant. The Appellate Division, First Department, unanimously affirmed without opinion. We granted leave to appeal.
This appeal presents the narrow question: when should the Statute of Limitations begin to run in a foreign object medical malpractice case?
At common law there was no fixed time for the bringing of an action. Personal actions were merely confined to the joint lifetimes of the parties. The Statute of Limitations was enacted to afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action. The statutes embody an important policy of giving repose to human affairs. (Schwartz v. Hayden Newport Chem. Co., 12 N Y 2d 212.) “ The primary consideration underlying such legislation is undoubtedly one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim where the ‘ evidence has been lost, memories have faded, and witnesses have disappeared.’ ” (Developments in the Law Statutes of Limitations, 63 Harv. L. Rev. 1177, 1185.)
The Supreme Court has noted that Statutes of Limitation “ are founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of *430 stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth.” (Riddlesbarger v. Hartford Ins. Co., 74 U. S. 386, 390.)
In 1930 we affirmed, without opinion, a decision of the Appellate Division in which it held that in a foreign object medical malpractice case the Statute of Limitations begins to run from the commission of the act (Conklin v. Draper, 229 App. Div. 227, affd. 254 N. Y. 620). At the time we considered Conklin no other jurisdiction had a contrary rule.
Just recently in Schwarts v. Hayden Newport Chem. Co. (12 N Y 2d 212, supra) we had an opportunity to review when the Statute of Limitations should run for medical malpractice treatment cases. In Schwarts, unlike the Conklin case, we were confronted with a plaintiff who alleged that a chemical preparation manufactured by the defendant, which was injected into the plaintiff’s sinus, in order for his sinus to be X-rayed, caused a carcinoma which required the removal of an eye. He instituted -an action claiming the medication was negligently prepared, j We held that the cause of action for the purpose of the Statute | of Limitations accrued at the time that the chemical was injected [puto the plaintiff’s body.
Our decision in Schwarts did not involve review of the precise issue presented by this appeal. A comparison of the alleged medical malpractice in Schwarts and that presented by this appeal points to an obvious distinction which is compatible with the underlying purpose of the Statute of Limitations and consistent with the rationale of Schwarts.
It is clear now that a fundamental difference exists, for the purpose of the Statute of Limitations, between negligent medical treatment and medication cases and cases involving negligent malpractice of physicians or hospitals in which a foreign object is left in a patient’s body. In the latter no claim can be made that the patient’s action may be feigned or frivolous. In addition, there is no possible causal break between the negligence of the doctor or hospital and the patient’s injury.
The so-called discovery rule employed in foreign object medical malpractice cases is in compatible harmony with the purpose for which Statutes of Limitation were enacted and strikes *431 a fair balance in the field of medical malpractice. The unsoundness of the traditional rule, as applied in the case where an object is discovered in the plaintiff’s body, is patent. “ It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had ‘ accrued ’ to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the [operation] ”. (Morgan v. Grace Hosp., 149 W. Va. 783, 792.)
In the case before us, the danger of belated, false or frivolous claims is eliminated. In addition, plaintiff’s claim does not raise questions as to credibility nor does it rest on professional diagnostic judgment or discretion. It rests solely on the presence of a foreign object within her abdomen.
The policy of insulating defendants from the burden of defending stale claims brought by a party who, with reasonable diligence, could have instituted the action more expeditiously is not a convincing justification for the harsh consequences resulting from applying the same concept of accrual in foreign object cases as is applied in medical treatment cases. A clamp, though immersed within the patient’s body and undiscovered for a long-period of time, retains its identity so that a defendant’s ability to defend a ‘ ‘ stale ’ ’ claim is not unduly impaired.
Therefore, where a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice.
There is a sharp and approximately evenly divided conflict in authorities on this issue in this country. Nine jurisdictions limit the discovery rule to cases where a foreign object has been negligently left in the patient’s body.[1] Eleven have adopted the discovery test for all malpractice cases regardless of whether *432 a foreign object is involved.[2] Two States have adopted the discovery rule by statute.[3] The courts in 21 States do not apply a discovery rule, holding that the cause of action accrues from the commission of the malpractice.[4]
We are more convinced, however, by the basic logic of the discovery rule than the numbers of jurisdictions which support that view. It is not only an equitable rule but also entirely consistent with the underlying purpose of the Statute of Limitations. (Lillich, The Malpractice Statute of Limitations in New York’s New Civil Practice Law and Bules, 14 Syracuse L. Bev. 42; Lillich, The Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Corn. L.Q. 339; Note, Limitations in Professional Malpractice Actions, 28 Maryland L. Bev. 47.)
An argument is made that the failure of the Legislature to pass bills which were suggested by the Law Bevision Commission, in order to ameliorate the interpretation given the Statute of Limitations in Conklin, indicates a legislative intent to have our interpretation frozen. This argument rests on unsure -ground. No one knows why the Legislature did not pass a proposed measure. Admittedly, if the bill had been discussed in both houses and defeated, this would be an indication of the ^Legislature’s purpose. With regard to the particular proposals before the Legislature, however, no such consideration *433 ever took place. Just recently a bill providing for a discovery rule was acted upon favorably by the Assembly only to fail to be reported out of a Senate committee. Are we to hold that a majority of a legislative committee, who give no reason for their failure to allow the whole body to vote on a measure, impart a legislative judgment which must be transmuted into a conclusive legislative intent? “ The practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation. Legislative inaction is a weak reed upon which to lean in determining legislative intent.” (Berry v. Branner, supra, p. 311).[5]
*434 Our decision does not encroach upon any legislative prerogatives. The Legislature did not provide that the Statute of Limitations should run from the time of the medical malpractice. This court did. Therefore, a determination that the time of accrual is the time of discovery is no more judicial legislation than was the original determination. Granted, the Legislature could have acted to change our rule; however, we would surrender our own function if we were to refuse to deliberate upon unsatisfactory court-made rules simply because a period of time has elapsed and the Legislature has not seen fit to act.
In Woods v. Lancet (303 N. Y. 349) we overruled a venerable precedent in order to give an injured child a cause of action for injuries occurring when it was a fetus. This despite legislative inaction. In Woods we stated: “ Surely, as an original proposition, we would, today, be hard put to it to find a sound reason for the old rule * * * Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game, but what has that to do with bringing to justice a tort-feasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals? Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case. Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it (Rumsey v. New York & N. E. R. R. Co., 133 N. Y. 79, 85, 86, and see Klein v. Maronelas, 219 N. Y. 383). ” (Id., p. 354.)
Similarly, in Greenberg v. Lorens (9 N Y 2d 195) we noted that, in a case in which recovery was allowed a member of the purchaser’s household for a breach of implied warranty of fitness for use, despite repeated inaction on the part of the Legislature, 1 ‘ the present rule which we are being asked to modify is itself of judicial making since our statutes say nothing at all about privity, and in early times such liabilities were thought to be in tort * * * Alteration of the law in such matters has been the business of the New York courts for many years.” (Id., pp. 199-200; see, also, Gelbman v. Gelbman, 23 N Y 2d 434; Millington v. Southeastern Elevator Co., 22 N Y 2d 498: Gallagher v. St. Raymond’s R. C. Church, 21 N Y 2d 554; Battalla v. State of New York, 10 N Y 2d 237; Bing v. Thunig, 2 N Y 2d 656.) In all these cases, this court overruled long-standing *435 precedents despite years of legislative inactivity during which, the Law Revision Commission presented a number of studies to the Legislature urging remedial legislation (see, e.g., Woods — 1935 Report of N. Y. L. Rev. Comm, p. 451; Greenberg—1943 Report, p. 409; 1945 Report, p. 23; 1959 Report, p. 59; Battalla —1936 Report, pp. 375-382,1026).
Courts and legislatures need not be viewed as antagonists in the area of tort law. Developing the law is the province of both, and the peculiar attributes of these institutions are complementary in getting the task performed. Judicial action is often necessary to bring to the attention of the Legislature a particular problem in order for it to accomplish the necessary reform which only legislative action can fashion (Cowan, Rule or Standard in Tort Law, 13 Rutgers L. Rev. 141, 159-160; Keeton, Judicial Law Reform — A Perspective on the Performance of Appellate Courts, 44 Texas L. Rev. 1254; Keeton, Creative Continuity in the Law of Torts, 75 Harv. L. Rev. 463; Peck, the Role of the Courts and Legislatures in the Reform of Tort Law, 48 Minn. L. Rev. 265 ; Mishkin and Morris, On Law in Courts, 316 [1965]).
"Where a court makes what appears to be a needed adjustment in an area in which the Legislature has failed to act, the Legislature is not thereby foreclosed from action. (Wong Yang Sung v. McGrath, 339 U. S. 33, 47; Yoshizaki v. Hilo Hosp., 433 P. 2d 220, 224, supra; Holytz v. City of Milwaukee, 17 Wis. 2d 26; Spanel v. Mounds View School Dist., 264 Minn. 279.) The Legislature, because of its flexibility, may wish, after consideration, to place an outside limit on bringing a cause of action in foreign object cases and may also wish to review the applicable time for the running of the Statute of Limitations for medical malpractice medication and treatment cases. Such action will, of course, be entirely appropriate as is ours, in the absence of legislative mandate.
Accordingly, the order of the Appellate Division should be reversed. The defendants’ motions to dismiss the complaint should be denied.

. Davis v. Bonebrake, 135 Col. 506 (sponge); Layton v. Allen, 246 A. 2d 794 (Del.) (hemostat); Billings v. Sisters of Mercy of Idaho, 86 Idaho 485 (sponge); Spath v. Morrow, 174 Neb. 38 (needle); Fernandi v. Strully, 35 N. J. 434 (wing nut); Seitz V. Jones, 370 P. 2d 300 (Okla.) (needle) ; Gaddis V. Smith, 417 S. W. 2d 577 (Tex.) (sponge); Christiansen v. Rees, 20 Utah 2d 199 (needle); Morgan V. Grace Hosp., 149 W. Va. 783, supra (sponge).

. Stafford v. Schultz, 42 Cal. 2d 767; City of Miami v. Brooks, 70 So. 2d 306 (Fla.); Yoshizaki v. Hilo Hosp., 433 P. 2d 220 (Hawaii); Springer v. Aetna Cas. & Sur. Co., 169 So. 2d 171 (La.); Waldman v. Rohrbaugh, 241 Md. 137; Johnson v. Caldwell, 371 Mich. 368; Grey v. Silver Bow County, 149 Mont. 213; Iverson v. Lancaster, 158 N. W. 2d 507 (N. D.); Berry v. Branner, 245 Ore. 307; Ayers v. Morgan, 397 Pa. 282; Wilkson v. Harrington, 243 A. 2d 745 (R. I.); cf. Chrischilles v. Griswold, 150 N. W. 2d 94 (Iowa).

. Alabama Code, tit. 7, § 25, subd. (1); Connecticut Gen. Stat., § 52-584.

. Acton v. Morrison, 62 Ariz. 139; Crossett Health Center v. Croswell, 221 Ark. 874; Saffold v. Scarborough, 91 Ga. App. 628; Mosby v. Michael Reese Hosp., 49 Ill. App. 2d 336; Guy v. Schuldt, 236 Ind. 101; Ogg v. Robb, 181 Iowa 145; Waddell v. Woods, 160 Kan. 481; Carter v. Harlan Hosp. Assn., 265 Ky. 452; Tantish v. Szendey, 158 Me. 228; Pasquale v. Chandler, 350 Mass. 450; Wilder v. St. Joseph Hosp., 225 Miss. 42; Thatcher v. DeTar, 351 Mo. 603; see, also, Mo. Statutes, § 516.140 (malpractice action must be brought within two years after act); Cloutier v. Kasheta, 105 N. H. 262; Shearin v. Lloyd, 246 N. C. 363; DeLong v. Campbell, 157 Ohio St. 22; Hinkle v. Hargens, 76 S. D. 520; Bodne v. Austin, 156 Tenn. 366; Murray v. Allen, 103 Vt. 373; Hawks v. DeHart, 206 Ya. 810; Lindquist v. Mullen, 45 Wn. 2d 675; Lotten v. O’Brien, 146 Wis. 258).

. “Prior to September 1, 1900, actions against physicians and surgeons based upon their negligence which resulted in hodily harm were subject to a three-year Statute of Limitations. In 1900 ,the Code of Civil Procedure, section 384 (1) was amended [L. 1900, eh. 117] by adding the word ‘ malpractice ’ as an actionable ease to the enumeration of actions to recover damages which had to he commenced within two years.” (1942 Report of N. Y. Law Rev. Comm,, p. 167.) In 1942 the Law Revision Commission recommended a limitation statute of one year after discovery with an outside limit of six years after the commission of the wrong (1942 Report of N. Y. Law Rev. Comm., pp. 141-143, 772). This bill was referred to the Codes Committee of the Senate and the Judiciary Committee in the Assembly. Neither committee reported on the bill to their respective houses.
In 1962 the Law Revision Commission recommended that medical malpractice actions accrue from the time of discovery, but in no event should an action be brought later than six years from the occurrence of the malpractice (1962 Report of N. Y. Law Rev. Comm., pp. 227-285). The Senate passed the bill. The Assembly’s Codes Committee, however, never reported on the bill (1962 Report, supra, p. 727).
In 1968 a bill was again introduced. This bill provided that the action would accrue from the time of discovery but limited the bringing of the action to within five years from the occurrence of the malpractice. This bill passed the Assembly, but failed to be reported out of committee in the Senate (1968 N. Y. Leg. Record & Index, pp. A. 64 [A. Int. 689], S. 416 [S. Int. 4497]).
When the CPLR was proposed, the draftsmen changed the old two-year statute to a three-year period of limitations. However, for strategic reasons, the draftsmen did not recommend a discovery rule (CPLR 214, subd. 6; Civ. Prae. Act, § 50, subd. 1; 1 Weinstein-Korn-Miller, N. Y. Prac., par. 214.17 et seq., but esp. par. 214.21). (2d Report, N. Y. Legis. Doc. [1958], No. 13, p. 538.)
The Legislature, therefore, does not appear to be disinclined to enacting a statute embodying a discovery rule.
Bills embodying discovery rules have passed both Houses of the Legislature at different times. Neither House, when it has had the opportunity to deliberate and vote upon a bill, has ever failed to pass the measure.