OPINION OF THE COURT
Fuchsberg, J.
These five separate cases against public corporations involve tort claims which cannot be pressed without the filing of a timely notice of claim. Common to all of them is the fact that they accrued more than 90 days before the effective date of recent amendments of subdivision 5 of section 50-e of the General Municipal Law (L 1976, ch 745, § 2). The heart of the question before us, crucial to survival of each case, is whether the new legislation may be applied retrospectively.
The Legislature fixed September 1, 1976 as the effective date of the amendment. It retained the pre-existing requirement that filing be effected within 90 days of accrual (§ 50-e, subd 1, par [a]). But it made two significant modifications of the statute: the grounds on which a court may allow late filing were expanded and the time within which an application for such relief can be made was lengthened.
Before the amendment, the primary ground for extension cognizable by a court was disability arising out of infancy or mental or physical incapacity; additionally, a court could permit late filing when a person entitled to assert a claim had either died before the expiration of the 90-day period or had placed justifiable reliance upon settlement representations made in writing by an authorized representative or insurance carrier for the party against whom the claim was to be made. The new standards are far more elastic. In substance, they require a court "to consider” not only the factors to which it was formerly limited, but other newly specified ones along with "all other relevant facts and circumstances”. Moreover, in deciding whether to exercise its discretion, the court’s attention is also to be focused on whether the public corporation or those acting for it acquired actual knowledge of the *408 essential facts of the claim within the 90-day period or a reasonable time thereafter.*
The outside time limit for a claimant who seeks to file belatedly was formerly "one year after the happening of the event upon which the claim is based”. Under the revision, the period during which late filing may be permitted is identical with the "time limited for the commencement of an action by the claimant against the public corporation”. Save where the claimant is under a disability (see Abbatemarco v Town of Brookhaven, 26 AD2d 664; La Fave v Town of Franklin, 20 AD2d 738), this is one year and 90 days (General Municipal Law, § 50-i).
With this before-and-after picture of the statute in mind, we outline the posture in which each of the five cases comes to us:
In Matter of Beary the claimant seeks damages for false arrest and malicious prosecution against the City of Rye. The criminal proceedings on which his claim is premised terminated in his favor when the Grand Jury dismissed all the charges against him. That was on January 14, 1976. His right to sue therefore accrued on that date (see Robbins v Robbins, 133 NY 597; Giglio v Delesparo, 46 AD2d 928). However, his claim was not filed until April 23, 1976, 10 days after the 90-day period had expired. Eight months later, on December 14, 1976, relying on the amendment which had gone into effect on the intervening September 1 and on evidence that the 10-day delay had been without prejudice to the city because its insurance carrier had received timely knowledge of the facts surrounding his claim, Beary moved to file a late notice or to have his original notice of claim declared timely. Special Term granted the alternative relief. The Appellate Division, Second Department, reversed, holding that no part of the amendment was applicable to claims accruing prior to its effective date and that claimant did not meet the preamendment standards (59 AD2d 905).
In Rodriguez the claim is that an infant prematurely born on December 22, 1969 suffered retrolental fibroplasia, a condition affecting her sight, as a result of malpractice in the administration of excessive oxygen in an incubator at a New York City hospital. Though her parents were informed of her condition before the termination of treatment at the hospital on April 20, 1970, they did not file a claim until January 9, *409 1976. The mother then successfully moved at Special Term for leave to do so. On October 5, 1976, the Appellate Division, Second Department, finding that the claim was untimely, reversed (54 AD2d 692).
Matter of Pauletti involves an 11-year-old child who was injured when she fell down a flight of stairs at a school operated by the Freeport Union Free School District. The accident took place in June, 1973; no claim was made until January, 1976. The infant’s mother than moved for an order directing the school district to accept a notice of claim nunc pro tunc as of a date within 90 days after the injury had occurred and to extend the infant’s time to institute action for a year following the date of the order. Special Term denied both this motion and one to renew made after the effective date of the 1976 amendment to section 50-e. The Appellate Division, Second Department, by a divided court, affirmed the first order (and held the second one academic), essentially for the reasons articulated in Rodriguez (59 AD2d 556).
In Matter of Smalls the claimant seeks to file a claim for medical malpractice alleged to have occurred in a municipal hospital on May 8, 1973 during the performance of a myelogram, a diagnostic procedure to visualize blockage of the spinal canal. The hospital continued to treat the complainant until October 9, 1973. The record supports her allegation that she did not learn that her continuing back and leg symptoms may have been caused by negligent administration of the myelogram until June 25, 1974, when a physician at another hospital brought that possibility to her attention. Her notice of claim was filed on August 29, 1974; on September 6, 1974 she moved for a declaration that it had been timely served. This motion initially was denied by Special Term, but on February 27, 1975 it was granted after reargument on the rationale of the "foreign object exception” to the general rule that a cause of action for medical malpractice accrues at the time the act occurs and not at the time of its discovery (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427; cf. CPLR 214-a). On December 14, 1976, the Appellate Division, First Department, acknowledging that the case was not truly one involving a foreign object, but extrapolating from Flanagan and pointing to the fact that section 50-e had been amended while the matter had been sub judice, affirmed "on all the facts and circumstances” (55 AD2d 537, 538).
Merced is another medical malpractice case. This claimant *410 underwent a sterilization operation in a New York City municipal hospital on September 6, 1971. She alleges that on November 20, 1973, when her genital, organs were again exposed during emergency surgery for an ectopic pregnancy, it was found that one of her fallopian tubes, which was to have been occluded in the course of the 1971 surgery, had not been sutured. She served a notice of claim on December 26, 1973 and thereafter commenced suit. Defendant’s answer having pleaded late filing of the notice as an affirmative defense, she moved to strike it pursuant to CPLR 3211 (subd [b]). The motion was denied on March 2, 1976, essentially on the ground that neither the "foreign object” nor the "continuous treatment” theories were available to defer the date of accrual (Borgia v City of New York, 12 NY2d 151) and that the claim therefore had come into existence in 1971. On February 17, 1977, by a divided court, the Appellate Division, First Department, expressly following its decision in Smalls and citing to Flanagan, reversed (56 AD2d 553).
In passing on these cases, our task is to determine whether, in relaxing the strictures of section 50-e in 1976, the Legislature intended that the changes it wrought apply to claims that accrued before September 1 of that year. Of course, had the amendatory language been explicit, we would have had no such burden. For our quest is not for what we might have preferred the Legislature to have done, but for what it in fact did. Since the direct answer is not evident from the statutory language itself, we must seek other guideposts.
The claimants argue that the amendments, designed to correct patent injustices, are "remedial” in nature, and that, since they affect procedures preliminary to suit against public entities, they are "procedural”. Their opponents press countervailing considerations upon us, such as the familiar rule of construction that favors prospectivity of statutes unless the contrary is clearly to be divined (see, e.g., Matter of Mulligan v Murphy, 14 NY2d 223; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 51, 52) and the fact that the statutory change in this case, though signed into law on July 24, 1976, carried an effective date in futuro (see, e.g., Matter of Deutsch v Catherwood, 31 NY2d 487), albeit the future date here was as close as September 1 and was one frequently used by our Legislature as a convenient target time against which to prepare for administering a new law.
However, though such factors are not to be ignored and, *411 in appropriate cases, may even be compelling, they are not ritualistic incantations meriting slavish application (see, e.g., Becker v Huss Co., 43 NY2d 527; Shielcrawt v Moffett, 294 NY 180; People v Cohen, 245 NY 419). Moreover we find it difficult to accept a basic assumption made by the respective litigants — that, in deciding on their retroactivity, the amended portions of the statute are necessarily to be treated as a whole. We know of no hard and fast rule that prevents us from analyzing them separately.
It is relatively easy to retrace the events which impelled the Legislature to expand the guidelines governing Judges before whom application for extensions are made. The amendments followed upon a recommendation made earlier in 1976 by the Judicial Conference (21st Annual Report of NY Judicial Conference, 1976, p 278). Its report relied heavily on our comments in Camarella v East Irondequoit Cent. School Bd. (34 NY2d 139, 142-143). In there urging the Legislature to fashion the reform we thought necessary, we emphasized the "need for legislative consideration of the harsher aspects of section 50-e” and took occasion to help identify the problem by unanimously adopting an earlier sentiment that the statute "should provide a greater discretion to give relief from its requirements” (Matter of Murray v City of New York, 30 NY2d 113, 121 [concurring opn]).
The latter statement was made in the context of a case involving not the time within which, but rather the grounds upon which, an application for late filing could successfully be made. In this area, the conference report, with the prescience of sponsorship, moved away from insistence that an applicant for late filing fall into specified categories; rather it proposed that in "determining whether to grant such permission the court [be] permitted to consider all relevant circumstances” (21st Annual Report of NY Judicial Conference, 1976, p 301). Given this emphasis on loosening the narrow constraints on judicial discretion, it seems clear to us that claimants whose causes of action accrued within the statutorily specified one-year period preceding the effective amendatory date may take advantage of the expanded guidelines.
That conclusion is in tune with the flexibility inherent in the guidelines. Indeed, the very availability of such discretion is a characteristic that distinguishes notice of claim statutes. In their use of the passage of time to bar the initiation of suit and in their reliance on basic principles of accrual to fix the *412 date when such a bar comes into play, they resemble Statutes of Limitations (Borgia v City of New York, 12 NY2d 151, 155-156; supra; see, also, Quintero v Long Is. R. R, 55 Misc 2d 813, 816-819 [Sobel, J.]). However, in leaving the determination of whether extensions of time are to be granted in exceptional cases to a delineated judicial discretion rather than an automatic tolling statute, they differ strikingly from conventional Statutes of Limitations (compare CPLR 208).
It has been said that "The only legitimate purpose served by the notice” is prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise (21st Annual Report of NY Judicial Conference, 1976, p 302; Adkins v City of New York, 43 NY2d 346, 350; Winbush v City of Mount Vernon, 306 NY 327, 333; cf. Salesian Soc. v Village of Ellenville, 41 NY2d 521, 524). The greater flexibility introduced by the amendments appears designed to encourage greater fairness in achieving that goal. Our original notice of claim statutes attempted to serve this purpose by imposing an unbending time bar on late claims (Matter of Martin v School Bd. of Union Free Dist., 301 NY 233, 236-237). Succeeding legislation gradually eased this strictness (L 1945, ch 694; L 1959, ch 814; L 1976, ch 745), but, as the nature of the exceptions listed in section 50-e until its most recent amendment attests, these were not functionally related to the achievement of its primary goal. Instead, they were directed only toward mitigating the hardship imposed on particular categories of claimants. In contrast, the 1976 amendments no longer confine the range of the discretion entrusted to courts to rigid classifications.
Under either the present or the previous section 50-e, the time limit set by the Legislature may be said to have two stages, the first when the 90 days from accrual of a claim has gone by and the second and terminal one when the time within which a court may exercise discretion has expired. In determining that the increase in judicial discretion is fully applicable to claims which on September 1, 1976 had not yet reached the end of the second stage, we consider it significant that the amendment expressly directs that whether the public corporation did or did not have knowledge be accorded great weight. Obviously, this is intended to meet legislative concern for assuring reasonably prompt investigative opportunity under the amendment. For even when a public body has had no formal alert that a claim in fact will be brought, actual *413 knowledge of the facts within 90 days or shortly thereafter makes it unlikely that prejudice will flow from a delay in filing that does not reach beyond the statutory period of a year. Bearing in mind the primary purpose of notice of claim statutes, we believe that the Legislature, in enacting the new guidelines, intended to apply them to claims which accrued within one year prior to the effective date of the amendment.
So it follows that there should be a reversal in Matter of Beary. The claimant there made his motion on December 14, 1976, well within the year after the January 14, 1976 accrual date of his claim; the amended criteria for the exercise of judicial discretion were already in force at this time. Furthermore, Beary made a showing that the 10-day lateness was without prejudice to the city because its liability insurance carrier had earlier learned of the facts and circumstances surrounding the events on which the claim is founded.
We further hold, however, that the amendment does not revive claims that accrued more than one year prior to its effective date. By September 1, 1976, these had passed beyond the power of judicial recall and there is nothing to suggest that the Legislature intended so remarkable a resurrection. Retroactivity of the portion of the amendment which replaces the one-year period with one measured only by the Statute of Limitations that otherwise would be applicable would make it possible for infants to newly file claims which had their genesis in events occurring up to 18 years earlier (see CPLR 208). True, these longer tolling provisions pre-existed the adoption of the amendment, but at that time the possibility that filing of a notice of claim might be permitted within a year after accrual alerted public corporations to the time frame within which there was need to garner information and to perpetuate proof. Now that the period within which late filing of claims accruing after September 1, 1976 may be granted has been elongated, these corporations may be expected to safeguard their interests by gathering and preserving evidence for a correspondingly longer period. But there was in the past no reason arising out of section 50-e for them to have followed such a practice beyond the one-year period during which permission to file late claims on behalf of an infant or person under disability was then obtainable.
The result of treating the amendment as to time as though it were retrospective would therefore be to open the door to an unknown number of claims the defense to which is unpre *414 pared and unpreparable. We cannot believe that such a result —exposing public corporations to the revival of ancient claims as distinguished from the mere continuance of ones that have not finally expired — if intended by the Legislature, would not have been clearly expressed. Even "Uncertainties are resolved against consequences so drastic” (Hopkins v Lincoln Trust Co., 233 NY 213, 215 [Cardozo, J.]).
This view is reinforced by the manner in which our statutes have otherwise dealt with enactments modifying time bars. CPLR 218, while extending the benefits of its lengthening of certain Statutes of Limitations to any cause of action not barred at the time of enactment, specifically states that it cannot be read as reviving causes of action already barred when it became effective. A similar provision in fact accompanied the original enactment of section 50-e (L 1945, ch 694, §14).
Consequently both Rodriguez and Matter of Pauletti must be affirmed. Their claims accrued in 1969 and 1973 respectively. Leave not having been sought in either case until 1976, their time to file had by then long expired.
For similar reasons, Matter of Smalls must be reversed. Even on the claimant’s "continuous treatment” theory, the date of accrual would be no later than October 9, 1973, when she was discharged from the hospital. But notice of claim was not filed until more than 90 days later. And none of the limited grounds on which the discretion of courts to grant an extension could then be invoked supported the motion she made in September, 1974 for a declaration that the notice was timely served. Nor do the facts, which describe only negligent treatment, afford the basis for a later accrual date under the Flanagan "foreign object” exception.
Finally, Merced too must be reversed. The "foreign object” on whose absence it is premised was not one present and therefore able to "retain its identity” so that no "possible causal break between the negligence of the doctor or hospital and the patient’s injury” could occur (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 430, supra). True the claimant nevertheless advances the argument, as she did at the Appellate Division, that considerations similar to those which motivated the court in Flanagan should be applied with like effect to the far different circumstances in her case. But the enactment of CPLR 214-a having clearly interdicted the extension *415 of the "foreign object” exception, we must reject that contention. By expressly prohibiting the inclusion of chemical compounds, fixation devices and prosthetic aids from the embrace of the term "foreign object” and by limiting the time within which an action based on the presence of such an object in the body of a patient may be commenced to one year from the date of its discovery, the Legislature left us no room but to conclude that it intended that Flanagan not be broadened beyond its existing confines (L 1975, ch 109, § 6). Accrual therefore was in 1971, when the malpractice is alleged to have occurred, and not in 1973, the year in which the notice of claim was served.
Accordingly, in Matter of Beary v City of Rye the order of the Appellate Division should be reversed and the matter remitted to that court pursuant to CPLR 5613, for the exercise of its discretion (see National Compacter & Technology Systems v Kohleriter & Spandorf, 38 NY2d 933); in Rodriguez v City of New York and in Matter of Pauletti v Freeport Union Free School Dist. the orders of the Appellate Division should be each affirmed; in Matter of Smalls v New York City Health & Hosps. Corp. the order of the Appellate Division should be reversed and the motion denied; and in Merced v New York City Health & Hosps. Corp. the order of the Appellate Division should be reversed and the order of the Supreme Court, New York County, reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
In Matter of Beary v City of Rye: Order reversed and the matter remitted to the Appellate Division, Second Department, for the exercise of its discretion, with costs to abide the event.
In Rodriguez v City of New York: Order affirmed, with costs.
In Matter of Pauletti v Freeport Union Free School Dist. No. 9: Order affirmed, with costs.
In Matter of Smalls v New York City Health & Hosps. Corp.: Order reversed, with costs, and the motion for leave to file late notice of claim denied.
In Merced v New York City Health & Hosps. Corp.: Order reversed, with costs, and the order of Supreme Court, New York County, reinstated. Question certified answered in the negative.
*416 APPENDIX
Before September 1, 1976 subdivision 5 of section 50-e of the General Municipal Law read in pertinent part (L 1959, ch 814):
"5. The court, in its discretion, may grant leave to serve a notice of claim within a reasonable time after the expiration of the time specified in subdivision one of this section [i.e., 90 days] in the following cases: (1) Where the claimant is an infant, or is mentally or physically incapacitated, and by reason of such disability fails to serve a notice of claim within the time specified; (2) where a person entitled to make a claim dies before the expiration of the time limited for service of the notice; or (3) where the claimant fails to serve a notice of claim within the time limited for service of the notice by reason of his justifiable reliance upon settlement representations made in writing by an authorized representative of the party against which the claim is made or of its insurance carrier.
Application for such leave must be made within the period of one year after the happening of the event upon which the claim is based, and shall be made prior to the commencement of an action to enforce the claim, upon affidavit showing the particular facts which caused the delay, accompanied by a copy of the proposed notice of claim. * * *”
After being amended (per L 1976, ch 745, § 2) subdivision 5 of section 50-e of the General Municipal Law provides:
"5. Application for leave to serve a late notice.
Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one [i.e., 90 days]. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation. In determining whether to grant the extension, the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits.
An application for leave to serve a late notice shall not be denied on the ground that it was made after commencement of an action against the public corporation.”

 The texts of the new and preceding statutes are appended to this opinion.