OPINION OF THE COURT
Myriam J. Altman, J.
In this action defendant Lila Nachtigall moves to dismiss the claims asserted against her on the grounds that the action is time barred by expiration of the Statute of Limitations; this court has not obtained personal jurisdiction over her; and the complaint fails to state a cause of action. Defendant S. Francis Ryan cross-moves for partial summary judgment dismissing plaintiffs’ first and second causes of action and defendant R. E. Wieche cross-moves for summary judgment dismissing the complaint on grounds identical to those asserted by defendant Nachtigall, with the exception of lack of personal jurisdiction.
This action was commenced by Carolyn and Charles Feigelson individually and by Mrs. Feigelson on behalf of *193 their son, Paul. The complaint consists of three causes of action. The first and second causes of action, sounding in malpractice and breach of contract, respectively, are asserted by Mr. and Mrs. Feigelson against all three individual defendants. The third cause of action, also for malpractice, is alleged on behalf of the infant plaintiff against defendants Ryan and Wieche, as well as New York Hospital, which is not a moving party on these motions.
In April of 1975 Mrs. Feigelson consulted Dr. Nachtigall in connection with her desire to become pregnant. On or about May 8, 1975 Dr. Nachtigall performed an artificial insemination upon plaintiff, which resulted in Mrs. Feigelson’s pregnancy. Plaintiffs allege that Dr. Nachtigall continued to treat Mrs. Feigelson until some time in August of 1975, while the doctor claims that treatment terminated on either May 1 or June 1, 1975.
After becoming pregnant, Mrs. Feigelson came under the care of Dr. Ryan, a specialist in obstetrics and gynecology. There is no allegation in the complaint that Dr. Wieche treated Mrs. Feigelson, after plaintiffs contend that Dr. Ryan acted on behalf of Dr. Wieche. The Feigelsons’ child was born on February 19, 1976.
On or about April 27, 1977 Paul Feigelson underwent a chromosomal analysis at which time it was discovered that he suffered from a chromosomal disorder causing mental retardation and physical disabilities. The plaintiffs were informed of the tragic results of this analysis by a letter received some time in May, 1977.
The first and second causes of action in the complaint are grounded on the assertion that defendants improperly advised the Feigelsons with respect to the risks of pregnancy for women over the age of 35 and the test of amniocentesis. It is plaintiffs’ contention that had they been properly informed, Mrs. Feigelson, a 36-year-old woman at the time of her pregnancy, would have undergone the test and upon the discovery of a chromosomal or genetic defect in the fetus, would have terminated her pregnancy. The third cause of action alleges negligence in the delivery of the infant plaintiff.
*194 On April 2, 1979 the summons and complaint in this action were filed with the New York County Clerk for the purpose of extending the Statute of Limitations for 60 days beyond its expiration (CPLR 203, subd [b], par 5). With respect to Dr. Nachtigall, plaintiffs claim that personal service was properly effected upon her by delivering the summons and complaint to her secretary and mailing the same to the doctor at her business address after a search failed to reveal her residential address. Defendant contends that this manner of service did not comply with the requirements of CPLR 308 (subd 2) in that the summons and complaint were not mailed to her last known residence.
The threshold issue which must be addressed on Dr. Nachtigall’s motion is whether, assuming, arguendo, that defendant was properly served, this action was timely commenced. CPLR 203 (subd [a]) provides that “[t]he time within which an action must be commenced *** shall be computed from the time the cause of action accrued”. In a malpractice action, the general rule is that the cause of action accrues when the malpractice occurs rather than when the malpractice is discovered (see Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, cert den 374 US 808). The application of the general rule to the facts as related to Dr. Nachtigall would result in the dismissal of the first cause of action as untimely. Although plaintiffs claim that the doctor continued to treat Mrs. Feigelson until some time in August, 1975, they contend that Dr. Nachtigall’s failure to properly inform and advise them occurred prior to July 1,1975. The relevant Statute of Limitations at that time provided that an action for malpractice must be commenced within three years (CPLR 214, subd 6). Consequently, the statute would have expired long before the purported service of the summons and complaint, whether the alleged malpractice occurred in May, June or August of 1975.[1]
*195 There are, however, recognized exceptions to this general principle of accrual. One of these, the foreign object exception, is relied upon by plaintiffs. As enunciated by the Court of Appeals in Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427), this rule states that a cause of action based upon discovery of a foreign object accrues when the patient could have reasonably discovered the malpractice. Plaintiffs argue that the fetus itself should be considered a foreign object and that the extra element on the child’s chromosome constitutes a foreign object which was not discovered or could not reasonably have been discovered until the spring of 1977.
The Flanagan rule cannot be extended to embrace the facts of this case. Effective July 1, 1975, the Legislature enacted CPLR 214-a which states that an action based upon the discovery of a foreign object must be commenced “within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier” and that “the term ‘foreign object’ shall not include a chemical compound, fixation device or prosthetic aid or device”. This statute evidences a legislative intent to limit the application of Flanagan. Although plaintiffs would argue that this statute is not applicable to alleged malpractice occurring prior to its effective date, the law now appears to be settled that the legislative intent embraced in the 1975 amendment to the CPLR is to be applied to cases under the former statute (Cooper v Edinbergh, 75 AD2d 757; Matter of Beary v City of Rye, 44 NY2d 398; Weber v Scheer, 58 AD2d 520).
In Merced v New York City Health & Hosps. Corp. (44 NY2d 398); a case decided in conjunction with Matter of Beary v City of Rye (44 NY2d 398, supra), the Court of Appeals reversed an Appellate Division ruling which had extended Flanagan to include an ectopic pregnancy resulting from a negligently performed sterilization. Both the sterilization and the pregnancy occurred prior to July 1, 1975. The court held that the action accrued when the sterilization was performed and not when the pregnancy was discovered. In so holding, the court stated (p 415), “By expressly prohibiting the inclusion of chemical compounds, fixation devices and prosthetic aids from the embrace of *196 the term ‘foreign object’ and by limiting the time within which an action based on the presence of such an object in the body of a patient may be commenced to one year from the date of its discovery, the Legislature left us no room but to conclude that it intended Flanagan not be broadened beyond its existing confines”. Essentially, the court rejected the argument that the fetus is a foreign object. Without reaching the philosophical, theological or scientific implications of a rule declaring a fetus to be a foreign object, it is clear that a fetus is discovered, at the latest, when a pregnancy is discovered. Under those circumstances, the Statute of Limitations would still have expired prior to the commencement of the action.
The Court of Appeals has recently refused to extend the foreign object discovery rule to a strict products liability case (Thornton v Roosevelt Hosp., 47 NY2d 780). In Thornton the plaintiff executor claimed that a chemical was injected into the decedent’s body in 1954, but that its deleterious effects did not become apparent until some 20 years later when the decedent developed cancer. The court rejected plaintiff’s contention that the cause of action accrued at the time the condition was discovered and noted that even in malpractice actions chemicals are not considered foreign objects. Consequently, even if the artificial insemination is analogized to the introduction of a chemical substance into the body, the foreign object discovery rule would be inapplicable.
Moreover, the facts herein are distinguishable from those in the Flanagan case. Here, the act of impregnation was intentional. In Flanagan, surgical clamps were unintentionally left in the body of the plaintiff. Plaintiffs do not allege negligence in the performance of the artificial insemination itself, but rather claim that the doctor rendered improper advice (see Weber v Scheer, 58 AD2d 520, supra). In addition, the rationale of the Flanagan (24 NY2d 427, 431, supra) decision, was based, in part, upon the fact that the plaintiff’s “claim [did] not raise questions as to credibility nor [did] it rest on professional diagnostic judgment or discretion. It [rested] solely on the presence of a foreign object within her abdomen”. In contrast, the basis of the *197 plaintiffs’ claim herein is the improper exercise of medical judgment.
For these reasons, plaintiffs’ argument must be rejected and the first cause of action against defendant Nachtigall is dismissed. Although the application of the traditional principle of accrual may at times seem to result in harsh consequences,[2] the extension of the foreign object discovery rule is more appropriately a matter for the Legislature (see Thornton v Roosevelt Hosp., 47 NY2d 780, 781-782, supra).
With respect to the cross motion, defendants Ryan and Wieche also seek dismissal of the first cause of action on the ground that it is time barred. Again, plaintiffs’ reliance upon the foreign object rule is misplaced under the circumstances of this case, thereby requiring application of the traditional rule that the cause of action accrues when the malpractice occurs. As plaintiffs argue that the malpractice occurred prior to July 1,1975, service upon the County Clerk on April 2, 1979 was untimely due to the expiration of the three-year Statute of Limitations no later than July 1, 1978. Even if it were assumed that the alleged malpractice occurred some time between July 1,1975 and the point in time at which it was no longer legally permissible for Mrs. Feigelson to terminate her pregnancy, the two- and one-half year statute effective as of July 1,1975 would bar the first cause of action. Consequently, the first cause of action is also dismissed as to defendants Ryan and Wieche.
Plaintiffs’ second cause of action is based upon an alleged breach of contract. However, the factual allegations of this claim are almost identical to those of the malpractice cause of action. The alleged contractual arrangement provides only that the defendants perform their duties with due care and act in accordance with the standards of their profession. There is no allegation that a specific result was guaranteed by contract (see Robins v Finestone, 308 NY 543). Although plaintiffs are not seeking damages for pain and suffering, a factor which has been utilized by the courts in determining whether a cause of action is essen *198 tially tortious in nature (Robins v Finestone, 308 NY 543, supra), this is not indicative of the contractual nature of the claim, but is a consequence of the state of the law which precludes plaintiffs from seeking such damages in this type of action (Becker v Schwartz, 46 NY2d 401). As the breach alleged is thus tortious in nature, the malpractice rather than the breach of contract Statute of Limitations is applicable (Calhoun v Gale, 29 AD2d 766, affd 23 NY2d 756). Therefore, the second cause of action is dismissed as to defendants Nachtigall, Ryan and Wieche for the reasons previously stated in dismissing the first cause of action. The dismissal of these claims as untimely renders moot consideration of the additional grounds asserted by defendants.
Finally, Dr. Wieche seeks dismissal of the third cause of action based upon his assertions that he has never treated Mrs. Feigelson and that there is no relationship between him and Dr. Ryan which would warrant a finding of vicarious liability. Plaintiffs contend that the cross motion is premature inasmuch as discovery has not been completed.
In support of his cross motion for summary judgment, Dr. Wieche has submitted an affidavit stating that he did not treat Mrs. Feigelson or Paul Feigelson at any time and that he was not in partnership with Dr. Ryan. Dr. Ryan has submitted an affidavit to the same effect. Defendants concede that they shared office space and “covered” for one another, but these facts do not provide a basis for vicarious liability (Graddy v New York Med. Coll., 19 AD2d 426, mot to dismiss app den 13 NY2d 1175). A party opposing summary judgment must set forth evidentiary facts (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338). Plaintiffs’ bare allegation in the complaint that Dr. Wieche treated Carolyn and Paul Feigelson is insufficient to raise a factual issue so as to defeat a motion for summary judgment (Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255). The fact that discovery has not been completed does not preclude the granting of summary judgment (Gibbons v Hantman, 58 AD2d 108, affd 43 NY2d 941).
*199 Accordingly, the motion and cross motions are granted in their entirety.

. While the complaint alleges that Dr. Nachtigall continued to treat Mrs. Feigelson until August of 1975, on this motion plaintiffs claim that the malpractice occurred prior to July 1, 1975. Even if plaintiffs argued that the malpractice occurred in August, the two- and one-half year Statute of Limitations in effect at that time would have also expired (CPLR 214-a).

. In this regard, however, it must be noted that plaintiffs failed to commence this action for nearly two years after discovery of the chromosomal disorder.