*7 OPINION OF THE COURT
Lee L. Holzman, J.
Davenport Neck Corporation (respondent) moved to dismiss the petition in this proceeding on the ground that the relief requested is barred by the Statute of Limitations. Petitioners cross-moved for partial summary judgment with regard to their request that respondent be compelled to issue and register on its books 12 Vi shares in the name of the trustees of the trust established under the will of Ralph A. Cavallo (decedent) and 10 Vi shares in the name of decedent’s spouse. Pursuant to the terms of decedent’s will, petitioners, his wife and son, are serving as coexecutors and cotrustees. Petitioners also seek a judgment in the sum of $750,000 as a result of the failure of the respondent to issue the shares as requested.
Both the respondent and Davenport Club, Inc. (the club) were incorporated in 1941 for the purpose of owning and operating a beach club on the shores of the Long Island Sound in New Rochelle. The land, alleged to consist of 6.75 acres, and the building are owned by the respondent and leased to the club which is described as a membership corporation formed for the purpose of operating the beach club. Article I, section 2 of the bylaws of the club provides in pertinent part as follows:
"2. Commencing January 1, 1959, all Single and all Regular Family Members are required to own at least one share of stock in the Davenport Neck Corporation or a Certificate of Membership in the Davenport Club, Inc. Such certificate to be issued by the Board of Directors upon receipt of a fee of $100.00.
"In the event a member sells or otherwise disposes of his share of Davenport Neck Corporation stock, he shall be suspended from the privileges of membership until he has reacquired such share of stock or has purchased a Certificate from Davenport Club, Inc. In the event of resignation of a member his share of stock shall be deposited in escrow with the Secretary in negotiable form; the Secretary will give the depositor a receipt therefore, and will sell to a member the share so deposited, in the order of deposit, at $100.00 per share. The proceeds of each sale will be paid by the Secretary to the depositor.”
Petitioners have submitted copies of documents which reflect that decedent and his wife purported to acquire shares in the respondent in the following manner: 21 shares on October *8 10, 1969 by assignments executed by Leroy Franz in favor of decedent and his wife (alleged in the petition to be transferred to them as tenants in common so that 10 Vi of these shares pass under decedent’s will to the testamentary trust and 10 Vi shares belong to decedent’s spouse); one share by an undated assignment executed by James Delehanty in favor of a blank assignee (alleged to have been executed on February 26, 1971 in favor of decedent); and one share by a February 26, 1971 assignment executed by the executrix of the estate of Charles De Zemler allegedly in favor of decedent.
The certificates for the 21 shares issued to Leroy Franz do not contain any legend indicating that there are restrictions as to their alienability. However, the certificate which had been issued to James Delehanty contains a legend that had been crossed out and the certificate which had issued to Charles De Zemler contains a legend which states: "This stock is not transferable except in accordance with the provisions of Article 1 of the By Laws of Davenport Club Inc. As agreed upon by the stockholder in his (her) application for membership.”
Decedent applied for membership in the club and in a membership application dated June 30, 1967, he agreed to comply with the club’s "constitution and by-laws”. His application was granted. After the transaction with Mr. Franz, in a letter dated October 16, 1969, decedent wrote to the corporation that he had omitted to mention in his letter of October 14 that he would appreciate it if the "transfer is made on the books” of the shares that had been purchased from Mr. Franz. Decedent sent another letter to the corporation dated October 31, 1969, in which he requested a letter from the corporation "indicating that on the books of the corporation” that the shares had been transferred from Franz to himself and his wife. Decedent also noted in his letter that he would like to become a director if there was a vacancy "or at least attend the meetings in order to protect my interest and the interest of many others that I represent who are shareholders of the Neck Corporation”. The club sent a letter to Leroy Franz dated December 5, 1969, accepting his resignation and indicating that he would be paid in accordance with the provisions of article I, section 2 of the club’s bylaws if he would deliver his stock. In a letter to the corporation dated December 16, 1969, on the stationery of the law firm of which decedent was a member, he noted that Mr. Franz had forwarded the above letter to him and then decedent wrote as follows:
*9 "Mr. Franz had his personal attorney check out Article 1, Section 2, of the By-laws of the Davenport Club and you may rest assured that before I turned over a substantial amount of money, not only I but my entire firm checked out the By-laws and the laws of the State of New York on this particular subject and two Supreme Court Judges who are personal friends also checked it out for me personally. There is no question that the stock purchased by us can be sold and need not be returned to the Association.
"This matter has been taken up with the President of the Neck Corporation, Francis P. Cunnion, and also with Edward Loughman and I am sure that they are also fully satisfied and agree with our position.”
In a letter dated January 14, 1970, on the stationery of the club, the treasurer wrote to decedent that he was "aware of [the] transaction with Mr. Franz” but that there was a question as to whether Mr. Franz had the right to transfer the shares in light of, inter alia, "the contractual requirements between member and Club”. One paragraph of this letter stated as follows: "As you can see there is a difference of opinion. My letters were my attempt to fulfill my obligation as Treasurer. Perhaps only a court case will resolve the matter. In any event, welcome to the discussion group, for this is a matter that in my opinion should be resolved for the best interest of all concerned.”
Although respondent contends that petitioners’ application for summary judgment must be denied because there are factual issues to be resolved and raises other issues with regard to the motion, these contentions do not have to be considered if respondent is correct in its assertion that the relief requested by petitioners is barred because it falls under either the six-year Statute of Limitations prescribed by CPLR 213 or the three-year Statute of Limitations prescribed by CPLR 214.
Neither party purports to have found any authority directly on point. Petitioners argue that the absence of explicit authority indicates that there is no governing Statute of Limitations and that a party may present an assignment of stock to be registered on the books of a corporation any number of years after the assignment, just as a deed may be presented to be recorded any number of years after the conveyance. To some extent this analogy is supported by the statements in Robinson v National Bank (95 NY 637, 641-642) wherein it is stated *10 that the requirements for registering stocks on the books of a corporation only exist for the corporation’s own protection and, therefore, a corporation’s wrongful refusal to register an assignment must be deemed waived as nonessential, rendering its consent to the transfer no more essential than "the consent of a county clerk or register was essential to the operative force of an executed deed”. However, the holding in Robinson was that the bank could not seize and sell stock for a debt owed to the bank by a person who was the record owner of the stock on its books but who had previously assigned the shares for value to a third person whom the bank had wrongfully refused to recognize as the owner on its books. This case has no bearing on whether there is an applicable Statute of Limitations where, as here, the shares were presented for registration and the corporation refused to register the shares on the ground that there was a valid contractual restraint against the transfer which was agreed upon for the benefit of the corporation itself and it was not until approximately 20 years thereafter that the assignee sought to compel the corporation to register the shares.
In Travis v Knox Terpezone Co. (215 NY 259, 265), an action in which the plaintiff sought to compel a foreign corporation to register a transfer of its shares and issue new certificates as well as damages for the refusal to transfer the shares, Judge Cardozo stated that the law gave plaintiff "a choice of remedies, equitable and legal”, including suing the corporation for the value of the shares "either in trover or in assumpsit” (based on the theory that the corporation had converted the shares by its refusal to transfer them), suing the corporation for any dividends it had failed to pay to plaintiff since the date of the transfer, or suing for "specific performance of the contract expressed in the certificate, and thereby place himself in possession of the evidence of title”. Respondent argues that all of the remedies enumerated by Judge Cardozo clearly fall within the Statute of Limitations prescribed by either CPLR 213 or 214, while petitioners counter that the primary issue in Travis was whether the court should assume jurisdiction over the affairs of the foreign corporation and not whether any Statute of Limitations was applicable to a proceeding to compel a corporation to register stock which had been validly transferred.
Before determining whether any Statute of Limitations is applicable in this proceeding, it is helpful to examine the policy considerations that led to the enactment of Statutes of *11 Limitations. Basically, these considerations are that there comes a time when "repose” should be afforded to all "human affairs”, that the overwhelming majority of valid claims are not allowed to remain neglected, and that a potential defendant, in addition to being entitled to expect " 'that the slate has been wiped clean of ancient obligations’ ”, also " 'ought not to be called on to resist a claim where the "evidence has been lost, memories have faded, and witnesses have disappeared” ’ ” (Flanagan v Mt. Eden Gen. Hosp., 24 NY2d 427, 429).
Petitioners are approaching the problem from the wrong end of the funnel when they assert that it should be concluded that there is no applicable Statute of Limitations governing the relief requested inasmuch as there is no statutory provision either requiring the registration of stock within a prescribed period or specifically fixing a Statute of Limitations for a proceeding to compel the registration of stock. The fact that CPLR 213 (1) provides that any action for which no time limitation is specifically prescribed by law must be commenced within six years clearly reflects a legislative intent that every type of proceeding must be instituted within some prescribed period unless specifically and clearly exempted either by statute or pursuant to the common law. This provision of the CPLR has been referred to as the "residual Statute of Limitations” (Rickerman v Rickerman, 34 AD2d 1069, 1070), and thus it has been stated that, "[gjenerally speaking, under the statutes of New York, there is a fixed limitation for every cause of action, legal or equitable” (75 NY Jur 2d, Limitations and Laches, § 139). However, the same source limits this generalization by recognizing that the residual Statute of. Limitations "is not applicable unless a cause of action is involved” and that there is no Statute of Limitations governing the period within which a will may be offered for probate. Unfortunately, the word "action” is not defined in CPLR 213 or elsewhere in the CPLR. Furthermore, even when a Statute of Limitations is applicable, the statute does not start to run until the party could have first maintained the action (75 NY Jur 2d, Limitations and Laches, § 143).
The nature of the relationship between a corporation and its former and present shareholders is germane to an analysis of which, if any, Statute of Limitations is applicable to the issues raised herein and when such a statute might commence to run. Even though the corporate charter or bylaws provide that a security may only be transferred on the books of the *12 corporation, this is generally viewed as a provision solely for the protection of the corporation rather than as a necessary prerequisite effecting the validity of the transfer (Robinson v National Bank, supra). Consequently, under neither the common law nor the Uniform Commercial Code is registration of the stock required to validly transfer shares in a corporation. Although the failure of the assignee to register the transfer permits the corporation to treat the registered stockholder (the assignor) as the owner, the transfer is completed between the assignor and the assignee as of the moment of the assignment. Therefore, even though the assignment has not been registered on the books of the corporation, the rights of the assignee may be enforced against the assignor, who might be viewed as a trustee for the assignee of any property that the corporation continues to deliver to the assignor as the registered owner (72 NY Jur 2d, Investment Securities, § 163).
The above analysis supports a rule permitting the assignee of shares to present them for registration any number of years after the assignment where the interest of the corporation with regard to whether a transfer is recorded on its books is limited to that of a passive party whose only concern relative to whether shareholder A validly transferred shares in the corporation to B is that it not incur any liability to either of them as a result of recognizing the other as the shareholder. Moreover, if the corporation refuses to register the shares solely on the ground that too long a period of time has elapsed from the date of the transfer to the date of presentment for registration, an expeditiously commenced proceeding to compel registration would not be barred by laches or any Statute of Limitations which could be asserted by the corporation. The reason that the corporation could not rely upon the Statute of Limitations is that the corporation suffered no injury by the delay and the assignee had no duty to the corporation to present the shares sooner. Consequently, any applicable Statute of Limitations upon which the corporation might rely could not start to run until the stock was presented for registration and the corporation refused to recognize the transfer.
Perhaps a viable alternative theory to reach the same result would be that the corporation, as a passive party to the dispute between A and B, does not have a right to raise the issue of the Statute of Limitations with regard to this dispute. Therefore, even if it fails to recognize a valid transfer on one occasion, it could be compelled to recognize that transfer any *13 number of years thereafter because, in effect, the relief requested might be viewed as tantamount to a determination recognizing the assignee as the valid owner of the shares from that time forward. Consequently, the corporation would not in any way be adversely affected by the determination. However, even assuming arguendo that there is merit to the above theory, if the shareholder were to seek damages from the corporation as a result of its prior refusal to register the shares, such an action for damages would clearly be governed by the residual Statute of Limitations, if not some other Statute of Limitations, which would commence to run from the date that the shares were first presented for registration and rejected. Thus, the court concludes that respondent may not rely upon the Statute of Limitations to preclude registration of the shares if its interest in this proceeding is merely passive, akin to that of a register of deeds or a stakeholder, while the defense of the Statute of Limitations is a valid defense to this claim if its interest in the outcome affects the well-being of the corporation or of all of its other shareholders.
Valid restraints on alienation of shares are clearly recognized under New York law (Allen v Biltmore Tissue Corp., 2 NY2d 534), and are binding upon assignees who have notice of the restrictions (72 NY Jur 2d, Investment Securities, § 66). Moreover, private clubs such as respondent may impose restrictions, i.e., consent or approval of the transfer by the corporation, its directors or its shareholders, which might not be able to be imposed by other types of corporations (72 NY Jur 2d, Investment Securities, § 63). Moreover, it would appear that, at least where the corporation is a party to the restrictive agreement, a valid restriction is binding upon the corporation and may be enforced by it (compare, Krieger v Mazlish, 145 NYS2d 815, and Peets v Manhasset Civ. Engrs., 4 Misc 2d 683). Even where there is a transfer in violation of a valid restriction, the transfer is effective between the transferor and the transferee notwithstanding that the wrongful transfer may be remedied by the party for whose benefit the restriction exists (72 NY Jur 2d, Investment Securities, §§ 73, 143).
It is not for the court to decide whether either side is right about the motive of the other or whether the property should be used for the pleasure or profit of the members of respondent. Nevertheless, it is not difficult to understand that people who formed a corporation for a particular purpose might also *14 seek, by agreement, to limit ownership to those who wanted to maintain that purpose. Thus, a dispute as to whether these restrictions can be enforced is not the same as a dispute between two individuals as to who is the owner of shares of stock and with regard to which the other shareholders have no direct interest aside from avoiding liability from recognizing the wrong person as the owner. Instead, this dispute concerns every shareholder because it directly affects whether shareholders can limit ownership of shares to those who are acceptable to the rest of them and it involves an issue which can be asserted by the corporation on behalf of all of its shareholders.
Perhaps the outcome of a trial on the issues raised herein might depend upon whether decedent knew or should have known about the alleged restraints on the alienability of the shares. It might very well be that death has sealed the lips of all of the principals to the 1969 transaction. By way of illustration, assume arguendo that, if decedent and Mr. Franz could be deposed, it could be established that the ultimate purchase price reflected an agreed upon compromise after decedent had pointed out that the shares might have to be returned to the corporation for a price of $100 per share and Mr. Franz had pointed out that the land was worth many times in excess of $100 per share. As previously noted, one of the reasons that Statutes of Limitations are enacted is so that issues can be tried while the evidence is still available to all parties.
The court finds that the corporation has a direct interest in the issues presented in this proceeding which might affect its existence as a club, the very purpose for which it was originally incorporated. This is an interest far greater than that of a register of deeds with regard to the validity of a deed, a stakeholder, or any other type of passive party. Instead, regardless of whether it is right, respondent has been asserting since 1970 that it has a contractual right not to honor the transfers because they were in violation of restrictions that were agreed upon for the benefit of respondent and all of its members.
Accordingly, the court concludes that this is the type of "action” that must be governed by one of the statutory periods prescribed in CPLR article 2. Therefore, all that remains to be determined is whether any event occurred which started the running of the statutory period. Here, the correspondence *15 between and amongst decedent, respondent, the club, and Mr. Franz from October 16, 1969 through January 14, 1970, establishes that both decedent and respondent knew by January 1970 that decedent was insisting that he had presented to respondent all that was required for the "transfer [to be] made on the books” of respondent with regard to the shares that he had acquired from Franz and that respondent was insisting that Franz did not have the right to transfer the shares due, inter alia, "to the contractual requirement” of the club’s bylaws. Although the record is much sparser with regard to the two shares at issue acquired by decedent on February 26, 1971, the correspondence of the parties with regard to the shares acquired from Franz as well as the fact that decedent remained a member of the club until his death without ever having had these two shares registered on the books of respondent makes it reasonable to conclude that these shares, at or about the time that they were acquired, were also presented and rejected for registration on the books of the corporation.
Consequently, the court finds that the Statute of Limitations applicable to this proceeding commenced to run no later than January 1970 with regard to the shares acquired from Franz and February 1971 with regard to the other two shares at issue. These are the dates from which decedent was asserting rights against the respondent as a result of the transfers and respondent was asserting that the transfers did not confer any rights against it because the transfers were in violation of a restriction for its benefit. Moreover, regardless of whether the applicable Statute of Limitations is deemed to be governed by the statute covering conversion of property, contractual actions, or the residual Statute of Limitations, the longest period within which the proceeding could have been commenced would be six years from the dates that the respondent initially refused to register the shares. Therefore, the relief requested relative to the shares acquired from Franz should have been commenced in a proceeding filed no later than 1976 and, with regard to the other two shares, the proceeding should have been commenced no later than 1977. Inasmuch as this proceeding was not filed until 1990, respondent’s motion to dismiss the petition as barred by the Statute of Limitations is granted.
[Portions of opinion omitted for purposes of publication.]