RACHEL E. WHITE, Admx., v. A. J. SCOTT.

(Filed 10 December, 1919.)

**Limitation of Actions—Cause Accrued—Mental Incapacity—Trusts—Evi-- dence.**

> The statute of limitations on a note begins to run from the time the cause of action, thereon accrues, Rev., 169, and when it has once commenced, it is not suspended because of the payee's mental incapacity thereafter; and in this case it is *Held*, that there was no evidence of a trust relation between the parties that would affect the operation of the statute,. or require a demand for payment by the payee's administrator.

CIVIL ACTION, tried before *Harding, J.,* at April Term, 1919, of CABARRUS.

Plaintiff alleged that defendant had executed to her intestate, Mary J.. Scott, three notes, one for $250, on 14 March, 1896; one for $50, on 3 April, 1897; and the remaining one for $320, on 9 July, 1896, all of them due one day after date, with interest from date. On the first note the last payment was made on 13 March, 1899; on the second on 3 April, 1899, and on the third on 9 July, 1898, and there were no later payments of any kind. Mrs. Scott died on 19 June, 1916. This action was commenced on 9 June, 1917. The payments were entered as credits on the notes.

The defendant admitted the due execution of the notes; denied the date of payment on the third note; alleged that a large part of the notes was intended as a gift from his mother, to whom the notes were payable, and pleaded the statute of limitation of ten years.

The plaintiff replied as to the statute that Mrs. Scott was *non compos mentis* for some time after an illness, though there was evidence that she had lucid intervals and her mental aberration was not continuous.. The plaintiff's witness, W. L. Winecoff, testified:

"I had known Mary J. Scott a long number of years. I did not know of her selling real estate until what she said. She told me she had. This was about 1900, I reckon. I do not mind whether it was 1900 or 1905. She told me she had sold her property to her son John. She did not tell me what she got for it. I did not ask her." Q. "Did she talk like she had any sense then?" A. "That was before she had that spell of sickness. I never saw anything wrong with her mind prior to the time she had that spell of sickness. She was an unusually intelligent woman. She attended church regularly." Q. "In your opinion she was one of the most intelligent ladies in that community?" A. "She was very intelligent. I do not remember whether or not she told me about the fact that she had been on a trade with her daughters and bought some of them out. I believe she told me she had bought Mr. Will Stewart's. part. I don't believe she told me about buying three-elevenths, and that.

:she sold the whole thing to John Scott after that. She was down sick two or three weeks with pneumonia and she got over it. After she got up she was all right at times. I discovered that her mind was not all right directly after she had pneumonia; at times I saw it was not all right." Q. "But the bigger part of the time her mind was all right after she got up from pneumonia?" A. "She appeared like it part of the time and part of the time I don't think she was."

The plaintiff also alleged that the defendant was agent of his mother during the time of the transaction in regard to the notes.

The court granted a motion of the defendant to nonsuit the plaintiff, :and judgment was entered accordingly. Plaintiff appealed.

*J. E. Crowell and H. S. Williams for plaintiff.*
*Maness & Armfield and L. T. Hartsell for defendant.*

WALKER, J., after stating the relevant facts as above: The defendant ·executed the three notes to the plaintiff as far back as the years 1896 .and 1897, so that they are barred by the statute of limitations, unless the plaintiff's intestate was insane at the time the cause of action upon the notes accrued, for that is the language of the statute, as will appear by this reproduction of it: "No person shall avail himself of a disability, unless it existed when his right of action accrued." Code of 1883, sec. 169; Revisal of 1905, sec. 169. According to the evidence in this case, Mrs. Scott's illness occurred in the year 1909, and, as it was subsequent to the accrual of the cause of action, it did not interrupt the operation of the statute, if the full time had not ·elapsed before her illness commenced. *Eller v. Church,* 121 N. C., 269; *Asbury v. Fair,* 111 N. C., 251. It is familiar learning that when the statute once begins to run no disability will stop it. *Kennedy v. Cromwell,* 108 N. C., 1; *Ervin v. Brooks,* 111 N. C., 358; *Causey v. Snow,* 122 N. C., 326; *Self v. Shugart,* 135 N. C., 187. When it starts to run during the lifetime of the ancestor, it does not stop, even though the heir is under disability at the death ·of the former, and at the time of descent cast. *Chancey v. Powell,* 103 N. C., 159; *Frederick v. Williams, ib.,* 189; Wood on Limitations, 11; *Pearce v. House,* term report, 722. It must appear that disability existed when the right of action accrued. *Gudger v. R. R.,* 106 N. C., 481. This being so, and all the evidence showing that the illness of Mrs. Scott ·occurred long after the accrual of the cause of action on the several notes—and there being no evidence, as we think, to the contrary—the court was right in dismissing the action.

The contention as to the trust relation between the defendant and the intestate is entirely without any merit. There is no sufficient evidence :to sustain any such view with reference to these notes. The plaintiff

was at the perfect liberty to sue upon them without making any demand.
There is no error in the proceedings of the court.

No error.