HENRY B. SHEARIN v. DR. JOHN T. LLOYD.

(Filed 7 June, 1957.)

**1. Appeal and Error § 51—**

On exception to judgment of involuntary nonsuit in a trial by the court under agreement of the parties, G.S. 1-184, the only question presented is whether the evidence, taken in the light most favorable to plaintiff, would support findings of fact upon which plaintiff could recover.

**2. Physicians and Surgeons § 20—**

Evidence to the effect that a surgeon left a foreign substance in the patient's body at the conclusion of an operation, is sufficient to raise an inference of negligence and to sustain a finding to that effect.

**3. Physicians and Surgeons § 18—**

An action for malpractice based on negligence must be instituted within three years from the accrual of the cause of action. G.S. 1-15, G.S. 1-46, G.S. 1-52(5).

**4. Limitation of Actions § 16—**

Where defendant aptly pleads a statute of limitations, the burden is on plaintiff to show that the action was instituted within the prescribed period.

**5. Limitation of Actions § 15a—**

Unless tolled by disability or the fraudulent concealment of the cause of action, a cause of action for negligent injury ordinarily accrues when the wrong is committed giving rise to the right to bring suit, even though the damages at that time be nominal and consequential injuries are not and could not be discovered until a much later date.

**6. Physicians and Surgeons § 18—**

A cause of action for malpractice based on the surgeon's negligence in leaving a foreign object in the body at the conclusion of an operation, accrues immediately upon the closing of the incision, and such action may not be maintained more than three years thereafter even though the consequential damage from such negligence is not discovered until sometime after the operation.

**7. Same—**

Where there is no evidence that a surgeon attempted to conceal from his patient the fact that a foreign substance had been left in the patient's body at the conclusion of the operation, but to the contrary that the surgeon frankly disclosed the facts upon their ascertainment by X-ray less than two years after the operation, nonsuit is properly entered in an action for malpractice instituted more than three years after the operation, there being no evidence of fraudulent concealment.

**8. Limitation of Actions § 1—**

Statutes of limitation are inflexible and unyielding, and operate without reference to the merits of the cause of action.

**9. Same: Constitutional Law § 10c—**

Even though the purpose of statutes of limitation is to afford security against stale demands and not to deprive anyone of his just rights by lapse of time, the making of law is the province of the General Assembly, and the courts do not have the power to write into a statute of limitations exceptions not therein appearing to prevent the bar of a meritorious cause of action.

APPEAL by plaintiff from *Carr, J.,* November-December Civil Term, 1956, of FRANKLIN.

Civil action instituted 14 November, 1955, to recover damages for alleged malpractice, wherein defendant, answering, denied negligence and in addition pleaded the three year statute of limitations. Upon waiver of jury trial, the court, at the close of plaintiff's evidence, entered judgment of involuntary nonsuit.

Plaintiff, in support of his allegations, offered evidence, which, in summary, tends to establish the facts stated below.

Defendant is a duly licensed and registered physician and surgeon, engaged in the practice of his profession in Louisburg, N. C.

On 20 July, 1951, plaintiff, then in pain, consulted a doctor in Youngsville, who sent him to defendant. After examination and diagnosis, defendant, on that date, at Franklin Memorial Hospital, operated, removing plaintiff's appendix.

At defendant's request, the hospital radiologist made X-ray films before the operation and also a few days thereafter.

Plaintiff was in the hospital some 13 days. During this period, he was treated by defendant. Thereafter, as directed by defendant, plaintiff returned to defendant for checkups. At first, defendant examined plaintiff each week, thereafter less frequently, the last examinations being a six-months checkup and a twelve-months checkup. On these occasions, plaintiff's symptoms were discussed; and the examination by defendant was by manipulation in the area of the incision. No additional X-ray pictures were taken until the occasion mentioned below.

At the time of the six-months checkup, plaintiff felt pain in the area of his operation, something "kind of scratching, rubbing" in him; but he did not tell defendant "about that right then." His then complaint was to the effect that his side was feeling uncomfortable. At the time of the twelve-months checkup, plaintiff complained to defendant that "it was getting sore, a little knot coming in there in my side, right in that incision." At each checkup, defendant advised plaintiff in effect that he thought plaintiff was going to be all right, that it took some time for a man of his age (plaintiff was 59 at the time of the trial) "to heal up and get tough."

Plaintiff next saw defendant on Saturday, 15 November, 1952. Then plaintiff complained to defendant that "the knot had got kind of red

and . . . larger," and that it throbbed and pained him at night to such extent that he could not sleep. Defendant, after examining plaintiff, told him: "It is something wrong."

As instructed by defendant, plaintiff returned on Monday, 17 November, 1952, when the hospital radiologist, at defendant's request, made additional X-ray films. Plaintiff was advised to return the next day, thus allowing time for the X-ray films to dry.

The X-ray films then made, included, for the first time, lateral as well as anterior-posterior films. These X-ray films, particularly the lateral films, disclosed in plaintiff's abdominal area a twisted opaque marker, of the kind put in a lap-pack so that the presence of a lap-pack in the body would show on an X-ray film.

Upon plaintiff's return on Tuesday, 18 November, 1952, he expressed to defendant his fear that he had a cancer. In plaintiff's words: ". . . when I went back he showed the x-ray to me, and he said it was to his sorrow and my goodness it won't a cancer. He showed the x-ray to me and he said it is that gauze or sponge or something that was left in there."

On Wednesday, 19 November, 1952, defendant operated on plaintiff, removing the lap-pack. Plaintiff stayed in the hospital six days. Upon leaving, defendant gave plaintiff some medicine to ease him and told him to come back. On the night of 25 December, 1952, a knot "right in the incision . . . rose up and bursted." This released pus and temporarily eased plaintiff's pain. This development was reported to defendant. He dressed plaintiff's side and instructed him that, if such a knot should form again, plaintiff should come to defendant, if possible, before it burst.

Another such knot did occur on or about 17 January, 1953, and plaintiff went to defendant. Defendant "lanced or slit it open and put a tube in it, . . ." Later, the tube "worked itself back out . . ."

On 9 May, 1953, after another such knot had formed, plaintiff went again to defendant. Plaintiff testified: ". . . Dr. Lloyd said there is just one more thing I am going to try, and if that don't work I am going to send you somewhere else to another hospital, so he operated on me again and taken out a round plug out of my side where that incision was, under the incision; he said it was about the size of a silver dollar."

In the fall of 1953, defendant stated to plaintiff that "all he was doing was killing that infection," and that plaintiff "needed another operation." Plaintiff did not accede to this suggestion by defendant and their relations ended.

Plaintiff paid defendant for his services in connection with the operation of 20 July, 1951. It does not appear that there was any payment or charge thereafter. Plaintiff was in the hospital on four occasions.

He paid in full the hospital bill incurred in connection with the operation of 20 July, 1951. He paid $140.00 on the hospital bill incurred in connection with the operation of 19 November, 1952. At the time of the trial, he had not paid the hospital bills in connection with his third and fourth visits, these apparently being of short duration. Defendant's answer refers to "the abscess being drained on January 17 and May 9, 1953."

A statement of the evidence bearing upon plaintiff's suffering, disability, loss of wages, etc., from time to time, subsequent to the operation of 20 June, 1951, is not relevant to decision.

Plaintiff's sole assignment of error is to the entry of said judgment of involuntary nonsuit.

*Hill Yarborough and Thomas F. East for plaintiff, appellant.*

*Smith, Leach, Anderson & Dorsett and Charles P. Green for defendant, appellee.*

BOBBITT, J. Where, upon waiver of jury trial in accordance with G.S. 1-184, the court makes no specific findings of fact but enters judgment of involuntary nonsuit, the only question presented is whether the evidence, taken in the light most favorable to plaintiff, would support findings of fact upon which plaintiff could recover. *Goldsboro v. R. R.*, 246 N.C. 101, 97 S.E. 2d 486; *Harrison v. Brown*, 222 N.C. 610, 24 S.E. 2d 470; *Insurance Co. v. Carolina Beach*, 216 N.C. 778, 7 S.E. 2d 13.

The legal obligations of a physician or surgeon who undertakes to treat a patient are well established. *Nash v. Royster*, 189 N.C. 408, 414, 127 S.E. 356; *Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E. 2d 762; *Hazelwood v. Adams*, 245 N.C. 398, 95 S.E. 2d 917; and cases cited.

The evidence was sufficient to support these findings of fact: (1) that defendant, in performing the operation of 20 July, 1951, introduced the lap-pack into plaintiff's body; (2) that he closed the incision without first removing the lap-pack; (3) that this was a breach of defendant's legal duty to exercise reasonable care and diligence in the application of his knowledge and skill to plaintiff's case; and (4) that injury to plaintiff proximately resulted therefrom.

It has been established by this Court, and generally, that the leaving of such a foreign substance in the patient's body at the conclusion of an operation "is so inconsistent with due care as to raise an inference of negligence." *Mitchell v. Saunders*, 219 N.C. 178, 13 S.E. 2d 242; *Pendergraft v. Royster*, 203 N.C. 384, 166 S.E. 285; *Buckner v. Wheeldon*, 225 N.C. 62, 33 S.E. 2d 480; Annotations: 162 A.L.R. 1299, 13 A.L.R. 2d 84.

The crucial question is this: Was the evidence sufficient to support a finding of fact that this action was commenced within three years from the time plaintiff's cause of action accrued?

The period prescribed for the commencement of an action for malpractice based on negligence is three years from the time the cause of action accrues. G.S. 1-15; G.S. 1-46; G.S. 1-52(5); *Lewis v. Shaver,* 236 N.C. 510, 73 S.E. 2d 320. The burden was on plaintiff to show that he instituted his action within this prescribed period. *Lewis v. Shaver, supra; Hooper v. Lumber Co.,* 215 N.C. 308, 1 S.E. 2d 818.

"In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, . . ." 54 C.J.S., Limitation of Actions sec. 109; 34 Am. Jur., Limitation of Actions sec. 113; *Aydlett v. Major & Loomis Co.,* 211 N.C. 548, 551, 191 S.E. 31; *Peal v. Martin,* 207 N.C. 106, 176 S.E. 282. Where the aggrieved party is under disability at the time the cause of action accrues, the action must be commenced "within three years next after the removal of the disability, and at no time thereafter." G.S. 1-17; G.S. 1-20; *White v. Scott,* 178 N.C. 637, 101 S.E. 369. The "disabilities" are defined in G.S. 1-17.

"It is a firmly established rule that with certain exceptions, such as in the cases of covenants and indemnity contracts, the occurrence of an act or omission, whether it is a breach of contract or of duty, whereby one sustains a direct injury, however slight, starts the statute of limitations running against the right to maintain an action. It is sufficient if nominal damages are recoverable for the breach or for the wrong, and it is unimportant that the actual or substantial damage is not discovered or does not occur until later. However, it is well settled that where an act is not necessarily injurious or is not an invasion of the rights of another, and the act itself affords no cause of action, the statute of limitations begins to run against an action for consequential injuries resulting therefrom only from the time actual damage ensues." 34 Am. Jur., Limitation of Actions sec. 115.

Our decisions support this general statement. Thus, where the defendant dug ditches on its land, the cause of action accrued when surface water was actually diverted by these ditches from its natural course so as to flood and damage plaintiff's crop and land. Until then there had been no invasion of plaintiff's rights. *Hocutt v. R. R.,* 124 N.C. 214, 32 S.E. 681. But, as stated by *Walker, J.,* in *Mast v. Sapp,* 140 N.C. 533, 53 S.E. 350: "When the right of the party is once violated, even in ever so small a degree, the injury, in the technical acceptation of that term, at once springs into existence and the cause of action is complete." (See *Sloan v. Hart,* 150 N.C. 269, 63 S.E. 1037.) In such case, as stated by *Walker, J.:* "When a cause of action once accrues there is a right, as of the time of the accrual, to all the direct

and consequential damages which will ever ensue, that is, all damages not resulting from a continuing fault which may be the foundation of a new action or of successive actions, and the law will in such a case take into consideration not only damage already suffered, but that which will naturally and probably be produced by the wrongful act, . . ." *Mast v. Sapp, supra;* see *Webb v. Chemical Co.,* 170 N.C. 662, 664, 87 S.E. 633.

"It is well settled that in an action for damages, resulting from negligent breach of duty, the statute of limitations begins to run from the breach, from the wrongful act or omission complained of, without regard for the time when the harmful consequences were discovered. (Citations omitted.)" *Devin, J.* (later *C. J.*), in *Powers v. Trust Co.,* 219 N.C. 254, 256, 13 S.E. 2d 431. In the *Powers case,* the alleged negligence was the failure of the defendant to inform the plaintiff that the property leased and conveyed to the plaintiff had been used by one infected with the germs of pulmonary tuberculosis, plaintiff alleging that in consequence of such negligent failure he contracted tuberculosis and suffered substantial injury to his health.

This rule, well settled in this jurisdiction, has been expressly applied to malpractice cases based on the alleged negligence of the defendant. *Lewis v. Shaver, supra; Connor v. Schenck,* 240 N.C. 794, 84 S.E. 2d 175.

It is inescapable that plaintiff's cause of action accrued on 20 July, 1951, when defendant closed the incision without first removing the lap-pack from plaintiff's body. Defendant's failure thereafter to detect or discover his own negligence in this respect did not affect the basis of his liability therefor. Earlier discovery and removal of the lap-pack would bear upon the extent of the injury proximately caused by defendant's negligent conduct.

It is noted that, apart from allowing the lap-pack to remain in plaintiff's body, there is no allegation or evidence as to any negligence of defendant in the performance of the operation on 20 July, 1951. It is noted further that there was no evidence sufficient to warrant a finding in support of plaintiff's allegations that, in relation to plaintiff's condition as of November, 1952, defendant failed to exercise due care either in the performance of the operation of 19 November, 1952, or in his subsequent treatment of plaintiff.

Moreover, plaintiff did not base his cause of action upon allegations that defendant negligently failed to discover the fact or results of his original negligence prior to 17 November, 1952, but alleged that defendant "fraudulently concealed from the plaintiff . . . his act and deed in leaving within the body of the plaintiff" the said lap-pack. Suffice to say, plaintiff's evidence was not sufficient to warrant a finding in support of his allegations as to defendant's alleged fraudu-

lent concealment of material facts. Hence, we need not consider the circumstances under which a defendant's fraudulent concealment of material facts would toll the running of the statute of limitations. For cases pertinent to this subject, see 74 A.L.R. 1320 *et seq.*, 144 A.L.R. 215 *et seq.*

In malpractice actions, it is generally held that the cause of action accrues from the date of the wrongful act or omission. 74 A.L.R. 1318; 144 A.L.R. 210.

In *Cappuci v. Barone*, 266 Mass. 578, 165 N.E. 653, where the defendant, in performing the operation, left a piece of gauze and a gauze sponge in the wound, the Court said: "Upon this branch of the defense the single question is, When did the cause of action accrue? The defendant as a surgeon, on May 11, 1924, impliedly undertook to use care in the operation which he was about to perform. Any act of misconduct or negligence on his part in the service undertaken was a breach of his contract, which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained, as the plaintiff contends. The damage sustained by the wrong done is not the cause of action; and the statute is a bar to the original cause of action although the damages may be nominal, and, to all the consequential damages resulting from it though such damages may be substantial and not foreseen."

In Missouri, *by statute*, a different rule applies. It is expressly provided, in relation to the statute of limitations, that "the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, . . ." Rev. St. Mo. 1939, sec. 1012.

Unless superseded by statute, the rule stated in *Cappuci v. Barone, supra,* is generally recognized. However, in some jurisdictions, its application to specific factual situations has been modified. These modifications are indicated by the decisions cited below.

In *Hotelling v. Walther*, 169 Or. 559, 130 P. 2d 944, 144 A.L.R. 205, where the alleged negligence related to a continuing course of treatment, it was held that the cause of action did not accrue until the treatment terminated; but the same Court in *Wilder v. Haworth*, 187 Or. 688, 213 P. 2d 797, held that this rule had no application when the action was based on a specific negligent act or omission occurring at an identifiable time and place. 74 A.L.R. 1322; 144 A.L.R. 227.

The Supreme Court of California, overruling its prior decision in *Gum v. Allen*, 119 Cal. App. 293, 6 P. 2d 311, adopted in *Huysman v. Kirsch*, 6 Cal. 2d 302, 57 P. 2d 908, the rule that the statute of limitations does not commence to run during the continuance of the relationship of physician and patient unless and until the patient discovers or by the

exercise of due care should have discovered the facts upon which his cause of action is based. As pointed out in *Wilder v. Haworth, supra,* the California Court applied, by analogy, the rule of the California statute of limitations in industrial accident cases.

In *Lindquist v. Mullen,* 45 Wash. 2d 675, 277 P. 2d 724, the majority view, in accord with *Cappuci v. Barone, supra,* is set forth in the opinion, while the California rule is discussed with approval in the dissenting opinion.

Our decisions impel the conclusion that plaintiff's cause of action accrued 20 July, 1951, immediately upon the closing of the incision. To hold otherwise would be to say that plaintiff did not then have a cause of action against defendant. This Court has rejected the view that the cause of action accrues when the injurious consequences are or should have been discovered. *Lewis v. Shaver, supra; Connor v. Schenck, supra; Powers v. Trust Co., supra,* and cases cited. The statute of limitations begins to run from the time the cause of action accrues. The only exception, as pointed out in *Lewis v. Shaver, supra,* relates to actions grounded on allegations of fraud and mistake. G.S. 1-52(9).

Statutes of limitations are inflexible and unyielding. They operate inexorably without reference to the merits of plaintiff's cause of action. They are statutes of repose, intended to require that litigation be initiated within the prescribed time or not at all.

It is not for us to justify the limitation period prescribed for actions such as this. See *Albert v. Sherman,* 167 Tenn. 133, 67 S.W. 2d 140. Suffice to say, this is a matter within the province of the General Assembly. Even so, it is noted that the California statute prescribes a one-year period; and no statute has come to our attention prescribing a longer period than three years.

These facts are noteworthy. Whether plaintiff may be considered as under defendant's professional care and treatment up to and including the twelve-months checkup, the twelve-months checkup, occurring more than three years before the institution of this action, appears to have marked the termination of their relationship; and, if their relationship terminated then, it would appear that, both under the rule of *Hotelling v. Walther, supra,* relating to a continuing course of treatment, and under the California rule, plaintiff's cause of action then accrued.

It is noted further that on 17 November, 1952, plaintiff was fully and frankly advised by defendant of the facts constituting the alleged negligence on which plaintiff based his cause of action. Even so, the cause of action was not commenced until 14 November, 1955, nearly three years from 15 November, 1952, the date on which plaintiff returned to defendant for further professional treatment.

Decision is based on the ground that plaintiff's cause of action accrued 20 July, 1951.

The purpose of a statute of limitations is to afford security against stale demands, not to deprive anyone of his just rights by lapse of time. *Butler v. Bell,* 181 N.C. 85, 106 S.E. 217. In some instances, it may operate to bar the maintenance of meritorious causes of action. When confronted with such a cause, the urge is strong to write into the statute exceptions that do not appear therein. In such case, we must bear in mind *Lord Campbell's* caution: "Hard cases must not make bad laws." (Quoted by *Walker, J.,* in *Mast v. Sapp, supra.*)

The judgment of involuntary nonsuit is sustained on the ground that plaintiff's action was not commenced within three years from the date his cause of action accrued.

Affirmed.