CARROLL JOHN WILLIAMS v. DR. THOMAS B. DAMERON, JR.

No. 778SC727

(Filed 15 August 1978)

1. **Appeal and Error §§ 24, 39.1— record on appeal—absence of assignments of error—certification not timely**

    An appeal was subject to dismissal where the record on appeal contained no assignments of error as required by Appellate Rule 19(c) and the record was not certified within 10 days after it was settled as required by Appellate Rule 11(e).

2. **Physicians, Surgeons and Allied Professions § 18— leaving scalpel tip in patient's body—insufficient evidence of negligence—inapplicability of res ipsa loquitur**

    In an action based on the alleged negligence of defendant orthopedic surgeon in leaving the tip of a scalpel blade embedded in plaintiff's back at the conclusion of disc surgery, the doctrine of *res ipsa loquitur* was inapplicable, and plaintiff's evidence was insufficient to show negligence on the part of defendant, where such evidence tended to show that a scalpel blade is normal-

ly used to open the covering of the disc; defendant surgeon chose a No. 15 scalpel rather than the No. 10 usually used because he knew the disc had hardened and there was more scarring than normally existed; defendant exerted the necessary pressure and the tip of the scalpel broke; defendant attempted to find the tip, but in the exercise of his best medical judgment, stopped the search after some 30 minutes because he was fearful of excessive bleeding which would be difficult to control in that area and because he decided that the tip was in an area where it would not move and could not cause harm to the plaintiff; plaintiff was thereafter advised of the situation; and an x-ray affirmed defendant's conclusion as to the location of the tip.

APPEAL by plaintiff from *Graham, Judge*. Judgment entered 5 May 1977, Superior Court, WAYNE County. Heard in the Court of Appeals 31 May 1978.

Plaintiff alleged that defendant, a physician and surgeon, was negligent in the performance of surgery on plaintiff's back in that defendant left a scalpel blade embedded in plaintiff's back during the course of surgery to relieve the pain resulting from a ruptured or slipped disc.

By answer defendant admitted that "on January 2, 1973, the defendant removed an extravasated disc at the L-5-S-1 level of the plaintiff's back; it is further admitted that during the course of the surgical procedure a small portion of the tip of a scalpel broke and was allowed, after a thorough exploration and examination of the disc space, to remain in the disc space between L-5 and S-1 inasmuch as the very small piece of metal was stable, immovable, and in an entirely benign area; and it is further admitted that following the operation the defendant explained the situation fully and in detail to the plaintiff."

At the end of plaintiff's evidence, defendant moved for a directed verdict on the basis that plaintiff had shown no negligence on the part of defendant or any causal relationship between defendant's conduct, negligent or otherwise, and the pain of which plaintiff now complains. The court allowed the motion, and plaintiff appeals.

*Strickland & Fuller, by Robert E. Fuller, Jr., for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell, by James D. Blount, Jr., and Joseph E. Kilpatrick, for defendant appellee.*

MORRIS, Judge.

[1]   At the outset we note that the record on appeal contains no assignments of error. Rule 10(c), North Carolina Rules of Appellate Procedure, provides that "[t]he exceptions upon which a party intends to rely shall be indicated by setting out at the conclusion of the record on appeal assignments of error based upon such exceptions. Each assignment of error shall be consecutively numbered; shall, so far as practicable, be confined to a single issue of law; shall state plainly and concisely and without argumentation the basis upon which error is assigned; and shall be followed by a listing of all the exceptions upon which it is based, identified by their numbers and by the pages of the record on appeal at which they appear. Exceptions not thus listed will be deemed abandoned. It is not necessary to include in an assignment of error those portions of the record to which it is directed, a proper listing of the exceptions upon which it is based being sufficient." In the record before us, there are no assignments of error whatever. The brief contains one *ARGUMENT*, which is the same as the *QUESTION INVOLVED*. The *QUESTION INVOLVED* refers to "Assignment of Error, Group I (R. p. 48)". At R. p. 48, we find plaintiff's exception No. 4, to the oral ruling of the court on the defendant's motion for directed verdict. There is no assignment of error. After the question is presented, under *ARGUMENT* appears the following: "This assignment of error is preserved in Exceptions No. 4 ( R. p. 48)." Another violation of the Rules is also present. Rule 11(e) requires that the record shall be certified within 10 days after it has been settled. Here the record was not certified for some 30 days after it had been settled. The appeal is clearly subject to dismissal. Nevertheless we choose to address the merits of the appeal in view of appellant's obvious attempt to comply with the spirit of the Rules.

Plaintiff's evidence is summarized as follows: Plaintiff testified that he injured his back when he jumped off a combine. Dr. Cecil Johnson treated him for a short time and referred him to defendant. Defendant prescribed some exercises, but plaintiff's condition worsened. Defendant then prescribed bed rest, but this did not improve his condition. Defendant then told plaintiff that surgery for the removal of a disc seemed imperative. He told plaintiff that plaintiff would probably be in the hospital from seven to ten days, back at work running his tractor in three

months, and back to normal in six months. The morning after surgery plaintiff talked with defendant. On the second day he again talked with defendant and at that time defendant told him that the scalpel blade had broken and a part of the blade was in the bone area, and he didn't think it would ever bother him. He did not again discuss the situation with respect to the scalpel tip. After his discharge from the hospital, plaintiff continued to experience pain. Dr. Dameron told him to continue his exercises and that he would get better. In March, he again visited Dr. Dameron. Medication which had been prescribed by another doctor for a kidney infection had reacted adversely causing a stinging feeling over his body. His back was not hurting quite as badly. He was advised to walk a mile each day. In April he continued to have pain. Dr. Dameron said he was not improving as rapidly as he had hoped but again prescribed walking. He was discharged by Dr. Dameron in April but obtained appointments in June and twice in August because of the severe pain. In August Dr. Dameron suggested a brace. Plaintiff testified that two years after the surgery he was still able to do very little other than supervise. Three years after the surgery, he could run the tractor for about an hour at the time on level ground. He said he could possibly have run the combine a little but of that he was not sure. No doctor has ever related the pain he has suffered to the scalpel tip left in his back. He has been seeing a chiropractor who says his problem is pinched nerves and that he doesn't see how the presence of the scalpel tip could help from bothering him. He has been seen by Dr. Hardy, a neurosurgeon, at the request of defendant's counsel. Dr. Hardy performed tests and made x-rays and was of the opinion that plaintiff had no problem. Plaintiff had also been seen by Dr. Harrellson, an orthopaedic specialist at Duke. These visits were at the request of his own counsel. Dr. Harrellson diagnosed his problem as degenerative disease rather than the scalpel tip which was causing his problem and that the problem was higher up in his back, and he did not believe the scalpel blade was causing his problem.

Dr. Dameron testified that he did not tell plaintiff, but plaintiff had developed some weakness in his foot which could have led to paralysis. Defendant does approximately 50 operations of this type each year and has been practicing for 24 years. The procedure used in this surgery is as follows:

". . . Prior to the surgery, the patient was given an anethesia and intubated and turned on his abdomen for the surgery. The back is washed with Phisohex to kill germs. The patient is then strapped, then draped by sterile sheets and towels, and then Vidrape, a cellophane type material with sticky stuff on it, is used to protect against infection. Infection is a main concern in this type of operation.

An incision is then made at the spinous processes down to the bone and then the muscles are moved off the bone. The ligament is then removed and one is then able to see the spinal cord which is moved out of the way. The disc [sic] were then examined and it was found that one of the disc have blown out of its normal base. A piece of the disc, a gristle type substance had come out of its normal place and was pressing on a nerve. This was the reason there was a loss of the use of the foot. The nerve was then freed. Where the blowout had occurred the disc area had already sealed over. Since there was a concern there might be more gristle inside that would be hidden, a little incision was made in the covering of the disc and the disc material was removed by an instrument called a Pituatary Rongeurs. This work was very near the spinal cord and so Dr. Dameron testified that he had to be careful about injuring the spinal cord. Since the Pituatary Rongeurs was too large because of the scarring which had occurred where the disc had gone out before, a smaller blade, a Number 15 blade, was used. In trying to make an incision in that disc covering so the Pituatary Rongeurs could be put in there the tip of the blade broke off. This had happened before. However, usually when that happens you can reach in with the Pituatary Rongeurs and bring it out. In this case we went ahead and removed the disc, the particles of disc, and we could not get that little tip out. . . ."

Dr. Dameron further testified that in looking for the scalpel tip, he looked in places where it might possibly do some harm. In attempting to be certain that the tip was in a location where it was not going to do any harm, he spent 30 minutes looking for it and stopped at the point at which they felt that to go on would cause more bleeding, because it is difficult to control the bleeding in that area. "When the scalpel blade broke, no x-ray pictures were made. X-ray machines are available to the operating room. We

could have gotten an x-ray machine into the operating room, but it would not have taken a picture of this." Subsequent x-rays revealed that the scalpel tip was in the gristle of the bone called the cartilaginous plate. It was sort of like a filling in a tooth. It does not do any harm there. "It is metal, like we put metal joints in people now to hold a joint. As a matter of fact when I first started in orthopaedics we used to routinely put a little metal clip right in the center of this plate." Normally a No. 10 blade is used, but because of the narrowing and scarring and because of plaintiff's anatomy, a No. 15 blade was chosen. The scalpel blade is used to open the covering of the disc with a criss-cross incision. The scalpel blade is also used to "push through in there". Pressure has to be applied to break through — especially in this case because it was more tight than is normally the case. The scarring had caused the disc to be tough and harder to get to. The spinal cord is only 1/16″ away and one can't be "jabbing". Pressure must be applied. That was when the scalpel blade broke.

> ". . . The cartilaginous plate is approximately one inch from the spinal cord, and at certain points is right adjacent to it. The blade is located about one-half inch from the spinal cord. As Mr. Williams gets older there will be some wear and tear in this area as he moves around. The cartilaginous plate would be approximately two and a quarter inches in diameter. Fifteen to twenty percent of the plate was removed during the operation. The plate is scooped away. That causes more fibrous tissue. This seals it off from the spinal cord. That way the ruptured disc will not come out and cause more trouble. This area was particularly sealed off in Mr. Williams because of that scalpel tip in there."

After the surgery, Dr. Dameron told plaintiff about the tip in his back and talked with him 15 or 20 minutes telling him that he did not think it would ever cause trouble. On a second occasion, he told him the same thing and plaintiff acted normally. Plaintiff remained in the hospital for six days. Dr. Dameron testified that some three weeks later he examined plaintiff who complained that he was tense, nervous, felt bad, hurt if he sat for long periods of time and hurt in his back. He was advised to walk more, avoid prolonged sitting and not to lift anything heavy. On his next examination, plaintiff said he was doing great, but Dr. Dameron testified that he was improving slowly. Plaintiff said he

felt bad in his face, his scalp, his arms and hands and his legs generally. He last saw plaintiff in August. Plaintiff said he hurt everywhere. Dr. Dameron testified that he felt this was not due to the surgery but to plaintiff's general tension and nervousness. Plaintiff seemed unusually concerned. The reflex test revealed that the left leg was better than it had been but not as good as normal, which is typical. Dr. Dameron further testified that he did not first put plaintiff on exercises but prescribed bed rest. He further testified that he would remove the tip for plaintiff if it bothered him but not otherwise, that it could leave the area in which it was lodged, that it had not, and in his opinion it will not move from its present location.

If there is no evidence of negligence on the part of defendant, or if there be evidence of negligence but no evidence that that negligence was a proximate cause of the pain and suffering of which plaintiff complains, the plaintiff's motion for directed verdict was properly granted.

Dr. Dameron testified that he chose a No. 15 blade, rather than a No. 10 (a larger blade) normally used in this surgery, because of the fact that the blade usually used was too large due to the scarring. There was absolutely no testimony, expert or otherwise, that this was not the right blade to use and that Dr. Dameron should have known that. There was absolutely no evidence, expert or otherwise, that Dr. Dameron was negligent in any respect. The complaint alleged that defendant negligently left the tip of a scalpel blade in plaintiff's back, and "[t]hat the defendant was negligent in his performance of his duties to this plaintiff as a patient, and had the defendant exercised due and reasonable care and used the skill and knowledge of a physician, he would not have left the scalpel blade embedded in the plaintiff's backbone and subjected the plaintiff to this additional physical pain and suffering as well as mental pain and suffering." There simply is no evidence that defendant was negligent in the performance of his duties. Plaintiff urges, however, that the doctrine of *res ipsa loquitur* is applicable. He relies on *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957); *Mitchell v. Saunders*, 219 N.C. 178, 13 S.E. 2d 242 (1941); and *Pendergraft v. Royster*, 203 N.C. 384, 166 S.E. 285 (1932). In each of those cases, the surgeon was not aware that anything was amiss in the surgical procedure performed, and it was not until quite some time later

that the damage became apparent. The operation was concluded, the foreign object left in the patient's body, and the surgeon was without knowledge of how the mishap occurred. In *Mitchell v. Saunders, supra,* a gauze sponge used during the surgical procedure, was left in the wound. The defendants testified that they used that type sponge during the procedure but that they carefully felt around to be sure none was left. The Court said: "The fact itself, that is, the leaving of a sponge within the body of the patient, is so inconsistent with due care as to raise an inference of negligence." 219 N.C. at 184, 13 S.E. 2d at 246. In *Shearin v. Lloyd, supra,* a lap-pack was left in plaintiff's side during an appendectomy. It was not discovered for several months when plaintiff began to suffer severe pain in the area of the surgery. X-ray revealed "a twisted opaque marker, of the kind in a lap-pack so that the presence of a lap-pack in the body would show on an X-ray film." Two additional operations were performed on plaintiff by defendant but the infection continued. In ruling that the trial court erred in granting defendant's motion for involuntary nonsuit, the Court again stated that the "leaving of such a foreign substance in the patient's body at the conclusion of an operation 'is so inconsistent with due care as to raise an inference of negligence.' [Citations omitted.]" 246 N.C. at 366, 98 S.E. 2d at 511, *citing Mitchell v. Saunders, supra.* In *Pendergraft v. Royster, supra,* defendant performed surgery on plaintiff to correct a misplaced womb and other problems. Several months later, a portion of a glass tube worked itself out of plaintiff's vagina. On subsequent occasions over a 12 month period, other pieces of glass were discharged from her vagina. Defendant testified that the cat gut used in surgery came in a small sealed tube; that the tube was broken by the nurse but at a different table than the table on which the vaginal packing was placed; that he did not break any tube and could not account for the glass having been left in plaintiff's womb. The Court held that the court correctly instructed the jury with respect to the application of the doctrine of *res ipsa loquitur.*

[2] We think these cases are inapposite to the case *sub judice.* Here defendant was aware that the disc had hardened and that there was more scarring than normally existed. For that reason he chose a No. 15 scalpel, rather than the No. 10 usually used. He exerted the necessary pressure, and the tip of the scalpel broke.

He attempted to remove it, but in the exercise of his best medical judgment, stopped the search after some 30 minutes because he was fearful of excessive bleeding which would be difficult to control in that area and having decided that the tip was in an area where it would not move and could not cause harm to the patient. Plaintiff was advised of the situation and x-ray affirmed defendant's conclusion as to the location of the tip. This is simply not a situation requiring or meriting the application of the doctrine of *res ipsa loquitur*.

Defendant's motion for directed verdict was based on the absence of evidence of negligence and the absence of evidence of causal relationship between any of defendant's conduct, even if negligent. We agree on both counts. We do not reach the second ground, and discussion of it is unnecessary. Suffice it to say the court correctly allowed defendant's motion.

Affirmed.

Judges VAUGHN and MARTIN concur.