247 N.J. Super. 72 (1991)
588 A.2d 860
JOHN W. WAGNER, JR., AND ELEANOR M. WAGNER, PLAINTIFFS-APPELLANTS,
v.
DEBORAH HEART & LUNG CENTER AND J. FERNANDEZ, DEFENDANTS-RESPONDENTS, AND PFIZER HOSPITAL PRODUCTS GROUP, INC., AND PFIZER, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1991.
Decided April 1, 1991.
*73 Before Judges J.H. COLEMAN and DREIER.
Andrew V. Clark argued the cause for appellants (Seaman, Clark, Addy and Clark, attorneys; Andrew V. Clark on the brief).
Charles C. Daley, Jr., argued the cause for defendants Deborah Heart and Lung Center and Dr. Javier Fernandez (Grossman & Kruttschnitt, attorneys; Eli L. Eytan, on the brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
This appeal requires us to decide whether the res ipsa loquitur doctrine is available to a plaintiff in a medical malpractice suit against a cardiothoracic surgeon who intentionally leaves inside the surgical wound a small piece of a stainless steel surgical needle which broke off while defendant was stitching the halves of the sternal bone together following triple bypass surgery.
Plaintiff John W. Wagner, Jr.'s (plaintiff) theory of liability during the trial was based exclusively upon the assertion that the cardiothoracic surgeon was negligent because of his decision to leave the tip of the surgical needle in the sternum. *74 Plaintiff does not contend there is any negligence associated with the needle breaking or that the needle was defective.[1] After plaintiff rested his case without calling an expert witness to establish the standard of care required and any deviation, and after defendants had produced an expert, the trial judge concluded that res ipsa loquitur did not apply. The judge therefore entered a judgment of involuntary dismissal. R. 4:37-2(b). We here affirm.
The facts are not complicated. In 1982, plaintiff age 56, was referred by his family physician to defendant Deborah Heart & Lung Center (Deborah) for a heart problem he had for some time. He was admitted to Deborah where a cardiac work-up was done. Following the work-up, he was told he needed open-heart surgery. On March 8, 1982, defendant Dr. Javier Fernandez, a cardiothoracic surgeon, performed a triple bypass surgery. In order to perform the open heart surgery, the sternum had to be split into halves and cranked open. Once the bypass procedures were completed, the closure procedure was commenced.
As part of the closure procedure, the halves of the sternum had to be positioned properly and stitched together with suture wires. To stitch the halves together, a surgical needle called an awl was used. The awl was made of special stainless steel. One end has a sharp cutting edge used to puncture holes through the sternal bone into which stainless steel suture wires were inserted to hold the sternal halves together. While Dr. *75 Fernandez was manipulating the awl needle through the sternal bone, a piece of the awl needle measuring about one-third of an inch in length by one-tenth of an inch in diameter broke off and lodged in the bone marrow inside the sternal bone. This was recorded on the hospital chart, and Dr. Fernandez testified that on March 10, 1982, he informed plaintiff that the "tip of the sternal needle broke off inside the sternum and he left it there since it would be [an] inert object, an object causing no harm."
Rather than interrupt the closure procedures, Dr. Fernandez purposely decided to leave the awl needle fragment in the sternum. The sternum was closed with six wire sutures, and the needle fragment was left inside the sternum. Plaintiff was discharged from the hospital on March 15, 1982.
Shortly after the bypass surgery, plaintiff experienced pain on the left side of his chest which was described by some physicians as "strain-on-incision" type pain. Plaintiff was readmitted to Deborah on March 24, 1982, with surgical complications related to some blood around the heart, a condition called post-carditis syndrome. He was treated and discharged on April 2, 1982. In May 1982, Dr. Dryden Morse felt that the prednisone medication plaintiff was taking may have been slowing the healing of the sternum. Plaintiff continued treatment at Deborah's outpatient department through the end of 1982 while still complaining of chest pain.
On February 1, 1983, a nuclear bone scan and special x-rays of the sternum disclosed nonunion of the sternum. Plaintiff was readmitted to Deborah on February 9, 1983, and Dr. Fernandez performed a sternal revision and removed five of the six stainless steel wire sutures. Plaintiff was discharged from Deborah on February 18, 1983.
Plaintiff continued to receive inpatient as well as outpatient treatment at Deborah between March 1983 and May 1984 while still complaining of chest pain. An x-ray taken on May 1, 1984, revealed that the awl needle fragment was located inside the sternum. It was not protruding through either of the two *76 layers of bone. Dr. Morse testified that the May 1 x-ray showed a questionable change in the bone around the needle fragment and after consulting with Dr. Gooch, a senior cardiologist at Deborah, they decided to admit plaintiff to remove the needle fragment. The questionable change in the bone around the awl needle fragment caused Dr. Morse to consider the "possibility of a low grade smoldering infection in the area cannot be ruled out."
On May 22, 1984, a second sternal revision was performed by Dr. Fernandez. Preoperatively, he concluded that the sternum was slightly movable because the halves remained slightly separated. Dr. Fernandez agreed with Dr. Morse that a possibility existed that there was an infection around the needle fragment. This sternal revision involved a surgical procedure which required opening the chest again. During this revision, Dr. Fernandez used a rongeur to penetrate through one layer of the sternum to retrieve the awl needle fragment. He rewired the sternum after inserting a drain. No sign of an infection was found when laboratory studies of the bone fragments and needle were conducted.
Dr. Fernandez presented an expert witness who testified before plaintiff rested his case. Dr. Harold Kay, also a cardiothoracic surgeon, testified that Dr. Fernandez did not deviate from the accepted standard of care when he decided to leave the awl needle fragment imbedded inside the sternum. He stated that plaintiff was rather ill and he had undergone a serious operation which extended over four hours. It was his opinion that the risks associated with removal of the broken needle tip far outweighed the risks associated with leaving it imbedded inside the sternum. The increased risks involved additional and prolonged bleeding, sternal fracture, and prolonged use of anesthesia. The downside was the fact that the awl needle tip was small, was completely inert, and was made of special stainless steel like other foreign objects that are surgically implanted within bone.
*77 The standard for determining a motion for involuntary dismissal at the conclusion of the plaintiff's case under R. 4:37-2(b), requires the court to accept as true all the evidence which supports the position of the party opposing the motion and to accord that party the benefit of all inferences which can reasonably be drawn therefrom. If reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969); Edwards v. Our Lady of Lourdes Hosp., 217 N.J. Super. 448, 459, 526 A.2d 242 (App.Div. 1987). The judicial function is a mechanical one. "The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion," Dolson v. Anastasia, supra, 55 N.J. at 5-6, 258 A.2d 706.
In a medical malpractice case, an involuntary dismissal may be granted if the plaintiff's evidence fails to establish prima facie that the defendant physician deviated from the accepted standard of care. Our law imposes upon a physician the duty to exercise "in the treatment of his patient the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in his field." Buckelew v. Grossbard, 87 N.J. 512, 522, 435 A.2d 1150 (1981) citing Schueler v. Strelinger, 43 N.J. 330, 334-345, 204 A.2d 577 (1964). See also Largey v. Rothman, 110 N.J. 204, 215, 540 A.2d 504 (1988); Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985); Klimko v. Rose, 84 N.J. 496, 503-505, 422 A.2d 418 (1980); Germann v. Matriss, 55 N.J. 193, 208, 260 A.2d 825 (1970). Rarely will a plaintiff be able to establish a deviation from accepted medical standards without the testimony of a qualified expert witness. See Evid.R. 19 and Evid.R. 56(2). Negligence is never presumed and the burden of proof is always upon the plaintiff. Buckelew v. Grossbard, supra, 87 N.J. at 525, 435 A.2d 1150.
One exception to the necessity for an expert witness to establish the standard of care and deviation is recognized when the doctrine of res ipsa loquitur is applicable. That doctrine *78 creates an inference of negligence and can be invoked only where the facts and circumstances are such that furnish reasonable grounds for the inference that "if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred." Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958). Stated differently, before res ipsa loquitur may be utilized to avoid the necessity of an expert, plaintiff's evidence must demonstrate that the occurrence itself ordinarily bespeaks negligence. Buckelew v. Grossbard, supra, 87 N.J. at 525, 435 A.2d 1150.
Here, plaintiff contends that Dr. Fernandez's decision to leave a foreign object imbedded in the sternum before the sternum was closed, is prima facie proof that he was negligent. To support this contention plaintiff relies upon a homogeneous group of malpractice cases where a foreign object consisting of a surgical tool or sponge, has been inadvertently left in a surgical wound and is discovered after closing the incision. Martin v. Perth Amboy Gen. Hosp., 104 N.J. Super. 335, 340-342, 250 A.2d 40 (App.Div. 1969), heads such a list. But here, we are not dealing with a case where the surgeon inadvertently left a foreign object in the patient. To the contrary, Dr. Fernandez intentionally left the awl needle tip imbedded in the sternum because it was his medical judgment that the risks were too high to remove it at that time.
Plaintiff's reliance on the plurality opinion in Anderson v. Somberg, 67 N.J. 291, 338 A.2d 1, cert. denied 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975), is also misplaced. There the doctrine was applied to a surgeon who as a result of either negligence or a defective product, knowingly left a broken rongeur tip inside the patient. In Somberg, unlike the present case before us,[2] the plaintiff alleged that the surgeon, among *79 others, was negligent in breaking the rongeur, not for leaving its tip in the wound. Id. at 295, 338 A.2d 1. Res ipsa loquitur was impressed in Somberg because a surgical tool that breaks when it is being used for its intended purpose under certain circumstances bespeaks negligence on someone's part or a product defect. That distinction renders Somberg inapplicable to the present case because plaintiff does not contend on this appeal that Dr. Fernandez, or anyone else for that matter, negligently caused the awl needle to break. Nor does plaintiff contend on this appeal that plaintiff should be allowed to recover damages based on products liability or breach of warranty as were alleged in Somberg.
To be sure, those additional theories of liability are highly significant. They were so important in Somberg that the court established the rule requiring all defendants to exculpate themselves under those limited circumstances, id. at 300-302, 338 A.2d 1. The Court announced that the rule it established "does not represent the doctrine of res ipsa loquitur as it has been traditionally understood." Id. at 299, 338 A.2d 1. Thus Somberg created a special rule of evidence based on a special responsibility analysis. Id. at 300-302, 338 A.2d 1.
Our research has not uncovered any reported case in this State with similar facts. However, the present case is almost identical to Cebula v. Benoit, 652 S.W.2d 304, 308 (Mo. Ct. App. 1983). There, a needle tip broke off inside plaintiff's sternum while defendant surgeon was stitching the sternal bone halves together. The surgeon also made the deliberate decision not to remove the needle fragment. Id. at 305. Cebula's claim was involuntarily dismissed, and on appeal he argued that expert *80 testimony was not needed in cases where foreign objects are left in operative cavities. Id. at 306. The Missouri appeals court affirmed the dismissal and held that Cebula was required to present expert medical testimony that the surgeon's deliberate decision not to remove the needle fragment deviated from the accepted standard of care. Also see Williams v. Dameron, 37 N.C. App. 491, 246 S.E.2d 586, cert. denied 295 N.C. 653, 248 S.E.2d 258 (1978); Anderson v. Somberg, supra, 67 N.J. at 303 n. 3, 338 A.2d 1. We are satisfied that Cebula points the way for us.
We fully agree with the trial judge that res ipsa loquitur does not apply under the facts of this case. The decision to leave the awl needle tip inside the sternum, which is the occurrence complained of, does not bespeak negligence under the circumstances. Absent any allegation that the sternal needle broke because of negligence associated with the way it was being used or because it was defective, the fact that it broke must be regarded as one of those unexpected events which "may arise in the course of [an] operation and incidental thereto which should generally be met according to the best judgment ... of the surgeon." Samoilov v. Raz, 222 N.J. Super. 108, 119, 536 A.2d 275 (App.Div. 1987). A surgeon is not liable for an honest mistake "in judgment as to the course of treatment taken ... so long as ... that judgment does not represent a departure from the requirements of accepted medical practice." Schueler v. Strelinger, supra, 43 N.J. at 344-345, 204 A.2d 577. When a plaintiff alleges that a surgeon's judgment deviates from the requirements of accepted medical practice, an expert witness is usually required to establish a prima facie case.
But defendant-surgeon did not simply rest based upon plaintiff's failure to call an expert witness. In an effort to demonstrate that the decision to leave the needle fragment inside the sternum was not a deviation from the required standard, Dr. Fernandez's expert, Dr. Kay, testified that the risks associated with retrieving the needle were great, and little or no risk was *81 associated with leaving it imbedded. Since plaintiff did not controvert defendant's proof, we are satisfied that a reasonable jury looking at the evidence in light of its combined experiences, could not have decided that the decision to leave the needle fragment inside the sternum was inconsistent with the course recognized by the medical profession as correct. Thus defendants were entitled to judgment as a matter of law. See Dolson v. Anastasia, supra, 55 N.J. at 6, 258 A.2d 706.
Beyond that, the application of res ipsa loquitur in this case would not further one of the principles underlining the doctrine, which is to shift the burden to produce evidence to the defendant who has superior knowledge or opportunity for an explanation of the circumstances of the occurrence. Tierney by Tierney v. St. Michaels, 214 N.J. Super. 27, 32, 518 A.2d 242 (App.Div. 1986), certif. denied 107 N.J. 114, 526 A.2d 184 (1987). Here, defendant Fernandez and his expert fully explained what happened and what risks were associated with any retrieval on March 8, 1982. Consequently, plaintiff proceeded to trial without an expert with full knowledge that the needle point was left inside the sternum and why that decision was made.
We hold that plaintiff's evidence was insufficient to employ res ipsa loquitur, and that an expert was required to establish the required standard of care and deviation. Because plaintiff did not present the required expert, the judgment of involuntary dismissal is affirmed.
Affirmed.
NOTES
[1] The amended complaint alleged negligence against all defendants and that defendants Pfizer Hospital Products Group, Inc. and Pfizer, Inc. (Pfizer) had manufactured and/or distributed a defective awl needle. Two years before the trial commenced in 1990, Pfizer moved for summary judgment, and counsel for plaintiffs signed a stipulation of dismissal as to Pfizer in February or March 1988. At approximately the same time, the remaining defendants filed a motion for summary judgment because plaintiff failed to submit a report from an expert witness respecting the standard of care and deviation. Summary judgment was denied without prejudice on March 4, 1988, "based upon plaintiff's representation that the case shall be presented on the theory of res ipsa loquitur."
[2] The present case resembled Somberg when the amended complaint was filed, but the stipulation dismissing Pfizer and the March 4, 1988, order consenting to proceed only on the theory of res ipsa loquitur rendered Somberg inapplicable. This occurred despite the statement in the plurality opinion in Somberg, supra, 67 N.J. at 303, 338 A.2d 1, that no defendant is entitled "to prevail on a motion for judgment [including summary judgment] until all the proofs have been presented to the court and jury." The propriety of the dismissal of Pfizer and the March 4, 1988, order have not been challenged in this appeal.