OPINION OF THE COURT
David O. Boehm, J.
This is a motion to dismiss the complaint upon the ground that the plaintiff has failed to comply with the requirements of section 50-i (subd 1, pars [a]-[c]) of the General Municipal Law.
On February 25, 1972, the plaintiff, Homer Kelly, suffered a heart attack while fighting a fire. As a publicly employed firefighter, the plaintiff thereby became eligible for extra disability retirement benefits payable from the New York State Policemen’s and Firemen’s Retirement System.
On February 28, 1972, a "sickness and injury report” concerning the plaintiff was filed with the office of the Fire Chief of the City of Rochester. According to the system employed by the Rochester Fire Department, the Fire Chief was required to send copies of such reports to the commissioner’s office, which then assumed the responsibility of forwarding such copies to the New York State Policemen’s and Firemen’s Retirement System. However, it appears that the system did not receive a copy of plaintiff’s "sickness and injury” report until July 10, 1972.
*437 On June 1, 1972, the plaintiff filed for accidental disability retirement under section 363 of the State Retirement and Social Security Law. Subdivision c of section 363 of that law, which has since been amended, provided that as one of the conditions precedent to the granting of disability retirement, a written notice must have been filed with the office of the State Comptroller within 30 days of the accident setting forth the nature and circumstances of the accident and the injuries sustained.
On December 14, 1972 the Comptroller made a finding that although the plaintiff was incapacitated from the performance of his duties, such incapacitation was not the result of an accident sustained in service and denied his application in its entirety. Plaintiff thereupon filed a request for a hearing and redetermination.
On April 19, 1973, the requested hearing was held pursuant to section 374 of the Retirement and Social Security Law. At that point, for the first time, plaintiff and his attorney became aware that there was a question as to the timeliness of the filing of the notice. The hearing was, accordingly, adjourned until August 8, 1973, at which time testimony was taken and the hearing concluded. No findings of fact or conclusions of law were then made.
On April 9, 1975, after many requests, the plaintiff’s attorney finally received from the State Comptroller’s office a copy of the notice of accident filed by the city, which notice had a time stamp indicating that it was received by the Comptroller’s office on July 10, 1972. Plaintiff thereupon on May 6, 1975, served a notice of claim upon the city for the damages sustained by him, the loss of 33% of the benefits to which he would have otherwise been entitled, as a result of the negligence of the city in not filing the notice within the required time.
On August 20, 1975, the hearing examiner held, by written decision, that the notice required by subdivision c of section 363 had been filed late, that no good cause was shown for failure to file the notice in a timely fashion and the application was again denied. On October 13, 1975, the hearing officer made findings of fact accordingly.
Thereafter, on November 14, 1975, the plaintiff served a second notice of claim upon the city, which repeated the recitals in the first notice and added that there now existed a final administrative decision. On April 7, 1976, a summons *438 was served, followed by service of the complaint on October 26, 1978.
In support of its motion for dismissal, the city points out that the plaintiff failed to serve a notice of claim in a timely manner, as required by sections 50-i (subd 1, par [a]) and 50-e of the General Municipal Law, that the plaintiff’s suit is barred by the section 50-i (subd 1, par [c]) period of limitations requiring that an action be commenced within one year and 90 days of the happening of the event and, lastly, that the plaintiff failed to allege timely service of a notice of claim in his complaint as required by section 50-i (subd 1, par [b]).
At the outset it should be pointed out that notice to the Fire Commissioner does not constitute notice to the retirement system (see Matter of Hehnich v New York State Policemen’s and Firemen’s Retirement System, 55 AD2d 730).
Turning to the question of the timeliness of the notice of claim, it is necessary to determine the date from which the 90-day period of limitation required by section 50-e of the General Municipal Law begins. The city argues that one of two dates should be used: either the date on which the specific act complained of by plaintiff occurred, i.e., the nonfiling of the notice with the State or, in the alternative, the date on which plaintiff and his counsel first became aware that the city might not have filed the notice. The plaintiff, however, contends that the period of limitations, whether for serving the notice of claim or commencing the action, does not commence until the date on which he had actual knowledge of the failure of the city to file.
Both parties rely on Sexstone v City of Rochester, (32 AD2d 737) in support of their positions. In Sexstone, the plaintiff sued the city for negligent issuance of a certificate of occupancy. While the facts are not entirely clear from a reading of the opinion, it is apparent that the notice of claim against the city was filed more than 90 days after the issuance of the certificate but within 90 days of discovery of the building violations which constituted the gravamen of the plaintiff’s complaint.
In holding that the filing of the notice of claim was timely, the Fourth Department stated (p 737): "The filing of the notice of claim was timely under sections 50-e and 50-i of the General Municipal Law, as it was within 90 days after the violations were discovered. The running of the 90-day period should be measured not from the time of the negligent act but *439 from the date the negligent act produced injury to the plaintiffs.”
The city concedes that the Sexstone case establishes the rule that the date of discovery of the injury, rather than the date of the injury itself, is the date upon which the 90-day period begins to run. As to this, the plaintiff contends that he did not discover that the city had not filed the notice within the required time until his attorney received the time-stamped copy of the notice of the Comptroller’s office in April, 1975. The city responds that the plaintiff became aware at the April 7, 1973 hearing that there was a question as to the timely notice.
At a hearing held pursuant to section 50-h of the General Municipal Law, the following colloquy took place between the plaintiff and counsel for the city:
"Q. So on April 19, 1973, you realized that there was a question as to whether this report had been timely filed, isn’t that right?
"A. At the time I thought it was another one of their devious tricks * * * [statement by counsel omitted]. I realized there was a question * * * This is not to say that I believed them in the least, anyone * * *
"Q. Did you personally get involved in any further investigations in that case? Did you personally go down to the fire department to determine whether the report had been filed in Albany?
"A. The thought never entered entered my mind, it’s like I told you previously, I figure once my report went into the Commissioner’s office * * *
"Q. I want you to testify from your own knowledge.
"A. Well, I went with my lawyer to the union president to look into the matter, and he claimed he sent them.
"Q. Who did you talk to there?
"A. Mary Lancafame.
"Q. What did Mary Lancafame say?
"A. She said she sent it in.
"Q. Did she say when?
"A. All I know is that she said she sent it in.
"Q. But she didn’t say what particular date it was sent out?
"A. Within 30 days period * * * That was the custom of that office.
*440 "Q. Did she produce a record of any sort showing that the record had been sent out on a particular date?
"A. Not to my knowledge * * * I took her word for it * * * I figured this is there [sic] office * * * she knows there [sic] works in there office better than I do. This was their custom, within 30 days.”
At that same hearing the plaintiffs lawyer stated that he did not know of the exact filing date until April 9, 1975, when he received the letter from the Comptroller’s office.
Under the circumstances, it cannot be said the plaintiff actually knew at the April 19, 1973 hearing that the notice had not been timely filed. At the very most he was given to understand that there might be a question as to this. This, of course, imposed the obligation upon him of endeavoring to find out what the actual filing date was, which his lawyer undertook to do, but without success until April 9, 1975. Until then the plaintiff, relying upon the custom and practice prevailing in the city fire department, assumed that his notice of disability had been filed by the commissioner’s office within the required 30-day period. Indeed, he was so informed by Mary Lancafame of that office.
To compel the plaintiff to serve a notice of claim and start an action against the city before he actually knew whether his notice of disability had been filed late or merely mislaid would be imposing a burden upon him to act as to something that depended upon a contingency. He ought not be compelled to assume the expensive obligations of a lawsuit upon the mere possibility that a claim existed. Not only would this be a perhaps unnecessary burden upon a claimant but upon a municipality as well.
Accordingly, it would seem more logical that the limitations period began to run on April 9, 1975, the date on which plaintiffs attorney received the time-stamped copy of the notice filed by the city. This accords with the law as well, particularly since the periods of limitation in the General Municipal Law are considered as governed by the same principles as those governing accrual of a cause of action under the CPLR (Borgia v City of New York, 42 Misc 2d 924). It is the general rule "that the period [of limitations] is measured from the date that the cause of action 'accrued’, a concept borrowed from substantive law and signifying the existence of all the factual elements requisite to maintenance of a lawsuit.” (1 Weinstein-Korn-Miller, NY Civ Prac, par 201.02, p 2-9.)
*441 As stated elsewhere by the same authors, "The cause of action accrues, for purposes of measuring the period of limitations, at the time the plaintiff is first able to commence the particular action.” (1 Weinstein-Korn-Miller, NY Civ Prac, par 203.01, p 2-60.)
In Durant v Grange Silo Co. (12 AD2d 694), the Third Department affirmed the denial of a motion for summary judgment on the claim that the action was barred by the Statute of Limitations, where the complaint alleged that the defendant had negligently constructed a silo in September, 1945 and thereafter, in September, 1957, the silo collapsed, causing damage. The court held (p 695) that the cause of action accrued on September 18, 1957, the date of the collapse of the silo, and that the Statute of Limitations began to run as of that date "rather than from the date of sale or the discovery, prior to the silo’s collapse, of certain defects in the materials or construction.”
The court went on to point out (p 695): "In New York the cause of action for negligence accrues when there has been an invasion of personal or property rights (Schmidt v. Merchants Desp. Transp. Co., 270 N. Y. 287; Great Amer. Ind. Co. v. Lapp Insulator Co., 282 App. Div. 545). 'Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to person or property arising from negligence which constitutes an invasion of personal right, protected by law, and, therefore, an actionable wrong. * * * There can be no doubt that a cause of action accures only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose.’ (Schmidt v. Merchants Desp. Transp. Co., supra, p. 300.)” (Emphasis in original; see, also, Konar v Monro Muffler Shops of Rochester, 28 AD2d 642.)
The principle has been stated another way, i.e., the Statute of Limitations ordinarily does not start to run until the party has a right to apply to a court for relief (Cameron Estates v Deering, 308 NY 24), or is first enabled to bring his action (Ripley v International Rys. of Cent. Amer., 8 AD2d 310, affd 8 NY2d 430; Ryan Ready Mixed Concrete Corp. v Coons, 25 AD2d 530).
Thus, where a right of action depends on the happening of a contingent future event, the cause of action accrues and the Statute of Limitations begins to run only from the time when *442 the event happens, even where a breach may have earlier occurred (Blakely v Agency of Canadian Car & Foundry Co., 73 NYS2d 573, affd 272 App Div 1001, mot for lv to app den 272 App Div 1015).
Therefore, although one’s rights might be determined in a declaratory judgment action, it has nevertheless been held that the failure to utilize this procedure in a claim involving pension benefits did not start the Statute of Limitations running with respect to the claim prior to the vesting of pension rights (Barninger v National Maritime Union, 372 F Supp 908).
One further general principle is applicable; the "[statutory and charter provisions conditioning the right to maintain an action against a municipal corporation upon the giving of certain prescribed notice within a specific time after accrual of the cause of action are remedial and should be liberally construed.” (40 NY Jur, Municipal Corporations, § 1063, p 318.)
There is an analogy between the type of situation presented here regarding the notice of claim and medical malpractice actions in which the injury to the plaintiff occurs or is discovered long after the initial medical procedure (see, e.g., Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427; Murphy v St. Charles Hosp., 35 AD2d 64).
In the instant case, the testimony at the 50-h hearing seems to have established without question that the first time the plaintiff had actual knowledge of the date of the late filing by the city was April 9, 1975, the date on which he received the letter. Whether characterized as the date on which the cause of action accrued or the date on which the injury was discovered, it is obvious that, prior to that date, the plaintiff could not have been sure that there was any reason to be aggrieved. Accordingly, in light of the fact that the plaintiff filed his first notice of claim within 90 days after the receipt of this letter, the motion to dismiss for failure to file in a timely fashion is denied.
An equally attractive alternative, which this court adopts without preference or disfavor to the theory expressed above, is that the statutory period commenced and the cause of action accrued on the date that the system formally denied the benefits sought by the plaintiff.
This result is consonant with the holding in Sexstone v City of Rochester (32 AD2d 737, supra) in that, had the plaintiff *443 been granted benefits by the retirement system, there would be no claim, no cause of action and no injury. As stated by the Fourth Department in Konar v Monro Muffler Shops of Rochester (28 AD2d 642, supra): " 'There can be no doubt that a cause of action accrued only when the forces wrongfully put in motion produce injury.’ ” (Citing Schmidt v Merchant’s Desp. Transp. Co., 270 NY 287, 300.)
In sum, we are not called upon to choose which of the two dates is the date on which the 90-day period commenced. The plaintiff was adequately protected in either instance by the filings of the notices of claim in May and November of 1975.
Turning now to the Statute of Limitations provision contained in section 50-i (subd 1, par [c]), a comparison of the wording of section 50-i (subd 1, par [c]) and section 50-e is appropriate. Section 50-i (subd 1, par [c]) provides that an action or special proceeding must be commenced "within one year and ninety days after the happening of the event upon which the claim is based” (emphasis added), while section 50-e (subd 1, par [a]) provides that a notice of claim must be filed "within ninety days after the claim arises. ” (Emphasis added.)
This semantic discrepancy creates the possibility of an anomalous situation in which, if the plaintiff files a notice of claim before accrual of the cause of action such notice could have been dismissed for failure to state a cause of action, while if the cause of action accrues more than one year and 90 days after the event the plaintiff could be barred from prosecution of the action by operation of the Statute of Limitations.
The city’s reliance on Cota v Madison Cent. School Dist. (89 Misc 2d 646, affd 62 AD2d 1083) is misplaced, for there the plaintiff knew when the accident had occurred with a school district bus from the date of the accident. The fact that she was unable to sue because, under "no-fault”, she could not do so until her medical expenses exceeded $500 was an unfortunate result of the Insurance Law, but it did not operate to extend the one-year and 90-day period of limitations.
The determination that must be made in all cases is which incident constitutes the "event on which the claim is based.” On the facts of the present case, this court concludes that the statutory event was either the date on which the plaintiff received the time-stamped letter from the Comptroller or the date of the denial by the Policemen’s and Firemen’s Retirement System of plaintiff’s claim.
In so doing, we find an obvious distinction between the *444 situation in Cota, in which the accident occurred and the injury was sustained simultaneously, and the situation here, in which the plaintiff did not know of the failure to file until some three years after it occurred. In a case such as this, it is more appropriate to apply the rationale of those cases dealing with medical malpractice (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, supra; Murphy v St. Charles Hosp., 35 AD2d 64, supra), and find that the running of the statute contained in section 50-i and the time for filing of the notice of claim are coextensive. This is consonant as well with the general principles enunciated hereinbefore with respect to the time when the notice of claim period of limitations commences to run.
As was the case with respect to the notice of claim, it is equally appropriate that the statutory period for bringing suit set forth in section 50-i could commence on either the date that the letter was received or on the date that benefits were denied. Without choosing one over the other, we find that in either event the action was commenced within the one year and 90 days required by the statute.
Defendant correctly contends that the complaint should be dismissed for failure to allege timely service of the notice of claim pursuant to section 50-i (subd 1, par [b]) (see Natoli v Board of Educ., 277 App Div 915, affd 303 NY 646). In this regard, it should be noted that plaintiff may amend his pleading without leave of the court at any time before a responsive pleading is served (CPLR 3025; 3211 (subd [f|). However, in the event of plaintiff’s failure to serve an amended complaint properly alleging compliance within 20 days after filing and service of the order herein, defendant’s motion to dismiss on this ground will be granted. Defendant’s motion is otherwise denied in all respects.