OPINION OF THE COURT
Ira B. Harkavy, J.
“He who sells what isn’t his’n must get it up or go to prison” (anonymous Wall Street saying).
The City of New York runs public auctions on a periodic basis to dispose of its excess real estate. The auctions are run on a caveat emptor basis. The terms of the sale include;
*514 “7. The successful bidder will be required to accept the parcel and or any improvements thereon in its ‘as is’ condition as of date of closing title * * *
“27a. Any objections to title * * * must be submitted to the Deputy Commissioner in writing no later than thirty (30) days after the date of the auction sale. The failure to submit such notice of objections shall be deemed a waiver of any and all title objections * * *
“24. The City, at its option may cancel the sale at any time before the actual delivery of the deed. In such event, and also where the City is unable to convey a marketable title * * * The City’s sole liability in such event shall be limited to the return to the successful bidder of all payments made to the City on account of the purchase, and the net cost of title examination without title insurance as actually charged to the Purchaser * * * and that thereupon the parties should be mutually released from all obligations as a result of such purchase.”
Plaintiffs, who would be called sophisticated bidders under the Securities and Exchange Commission rules, were the bidders on a parcel in Cobble Hill, Brooklyn, at the July 27, 1983 auction. They were the successful bidder of parcel 119, known as block 381 lot 24 in Brooklyn more fully described as “South side of Huntington Street, 100 feet west of Court Street, size 100 x 100 zoned R6, assessed for $12,800, minimum upset price $32,500.” Plaintiffs’ bid was $150,000. As required by the City of New York they deposited $67,500 with the city on July 27th and July 28th as and for a down payment. In addition plaintiffs applied for a mortgage with the City of New York, and as required tendered an additional $825 representing a mortgage application fee.
On August 2, 1983, plaintiffs’ attorney ordered a title search from Home Abstract Corp. On September 7, 1983, the title report was received. It showed that the City of New York did not own the property it contracted to sell. The Director of Auction Sales was immediately notified verbally and a copy of the title report was forwarded to the city by letter dated September 7, 1983. On October 13, 1983, and again on November 1, 1983, plaintiffs’ attorney wrote to the city requesting a refund of all expenses and disbursements incurred by the plaintiffs.
The City of New York, by letter of November 9,1983, advised the plaintiffs’ attorney that a resolution canceling the sale had been prepared and was being submitted to the Board of Estimate. The letter further stated that “the report and resolution as *515 prepared requests reimbursement for [plaintiffs] of $150 paid to Home Abstract Corp.”
On November 16, 1983, plaintiffs filed a notice of claim with the Comptroller of the City of New York. The claim was disallowed on December 27, 1983. Thereafter, on or about January 10, 1984, plaintiffs commenced an action against the City of New York for $2,250 for expenses and fees incurred together with interest on the down payment of $65,000 from July 27, 1983 to the date defendant actually refunded the $65,000.
On or about February 22, 1984, defendant returned the $67,500 down payment and the $150 title examination fee to the plaintiffs.
At the trial plaintiffs claimed the following:

The defendant, City of New York, asks that the claim be dismissed on the grounds that plaintiffs failed to comply with General Municipal Law § 50-e in that the notice of claim was not filed within 90 days of the date of sale which was July 27,1983. But if the claim was allowed, the City of New York concedes that plaintiffs are entitled to return of the $825 mortgage application fee, but nothing else.
The first issue to be determined is whether the notice of claim was timely served.
General Municipal Law § 50-e (1) (a) states that “In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action * * * the notice of claim shall comply with and be served within ninety days after the claim arises”.
Case law provides that a claim arises and the 90-day period beings to run from the date of discovery of the injury, rather than the date of the injury itself. (Kelly v City of Rochester, 98 Misc 2d 435 [1979].)
In the instant case, plaintiffs, upon becoming the successful bidder for the parcel at the auction knew of no injury. Plaintiffs *516 had all expectations of becoming the owners of the property and were looking forward to a large monetary gain. They expeditiously ordered a title search as required under the conditions of the sale. It was not until September 7 that plaintiffs received the title report and discovered that the city did not own the property it was selling. On November 16th, within 90 days of the date of discovery, plaintiffs filed a notice of claim.
 However, the city had full and actual knowledge of plaintiffs’ claim two months before plaintiffs filed a notice of claim. Plaintiffs notified the city of their claim on September 7, and subsequently on October 13 and November 1, 1983. The court in Matter of Cicio v City of New York (98 AD2d 38, 39 [1983]) held that “[A]ll relevant factors are to be considered, including the prejudice to the municipality and whether it obtained actual knowledge within the 90-day statutory period or shortly thereafter”. The city knew of its wrongdoing on September 7,1983, and tried to rectify it by the resolution of the Board of Estimate of November 17, 1983, in which the city authorized return of the down payment and the title inspection fees. For the city to claim that plaintiffs are not entitled to recover that which they are entitled to under the “Terms of Sale” is a new high in chutzpah. If anyone other than the City of New York tried to get away with selling that which they do not own, the wheels of justice would remove them from the scene for a period of time.
Plaintiffs, according to the “Terms of the Sale” aren’t entitled to interest on deposit of their down payment. But the City of New York may not keep the funds for an unreasonable amount of time. The New York State Legislature in State Finance Law article 11-A has recently defined what is a reasonable time in which payment is made. State Finance Law § 179-d sets standards for payments of bills incurred by State agencies within specified periods of time and requires interest payments in situations where contract payments do not conform to these standards. State Finance Law § 179-f sets forth 45 days as a reasonable time for making of payments. While this law was not in effect at the time of the city’s fiasco and is not binding on anybody, the court finds that the law is a guide to determination of what was a reasonable time for the return of the down payment. The court finds that the down payment should have been returned within 45 days of the date of notification to the city that it did not own the property, to wit, 45 days from September 7, 1983. The court determines that interest is due from October 22,1983 until February 22,1984, at the legal rate of 9%. The court calculates the amount to be four months at 9% multiplied by $65,000 which computes to the sum of $1,950.
*517 The City of New York concedes that the $825 paid for the mortgage application fee is a payment made to the city on account of the purchase. As such, plaintiffs are entitled to judgment for $825 with interest at the legal rate of 9% from the date when payment should have been made, October 22, 1983.
Plaintiffs’ claim that they are entitled to attorney’s fees, accountant’s fees and auctioneer’s fees is denied. Where there is an absence of statutory authority or affirmative contractual obligations, as there is here, attorney’s fees and accountant’s fees may not be awarded. “[EJxpenses incurred by a litigant, in seeking legal redress, are not recoverable” (Kessler v Austin, 234 NYS2d 857, 858 [1962]; Matter of Green [Potter], 51 NY2d 627, 630 [1980]; City of Buffalo v Clement Co., 28 NY2d 241, 262-263 [1971]).
Furthermore all of these costs were specifically excluded from the “Terms of the Sale”. The “Terms of the Sale” limit liability to payments made to the city on account of the purchase and the net cost of title examination. Auctioneer’s fees, attorney’s fees and accountant’s fees are not payments paid on account of the purchase, but business risks assumed by the plaintiffs. It is clear that the city intended to exclude the above costs from the “Terms of Sale,” otherwise they would have specifically included them as being recoverable expenses in the same manner as it included the net cost of title examination as a recoverable expense. Plaintiffs acquiesced to the terms and conditions of sale by bidding at the auction and are bound by them. (Lift v City of New York, 37 Misc 2d 406 [1962]; Eretz Realty Corp. v City of New York, NYLJ, Jan. 20, 1967, p 15, col 6; Laba v Carey, 36 AD2d 823 [1971], revd on other grounds 29 NY2d 302 [1971].)
Judgment for the plaintiffs for $1,950 with interest from February 22, 1984, and $825 with interest from October 22, 1983, plus costs and disbursements.